COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

§

No. 08-07-00235-CV

§

THE STATE OF TEXAS,                                                    Appeal from

§

v.                                                              68th District Court

§

FIVE THOUSAND FIVE HUNDRED                        of Dallas County, Texas
DOLLARS IN UNITED STATES                  §
CURRENCY.                                                  (TC # DV05-03260-C)

§

**O P I N I O N**

The State of Texas appeals from a judgment denying its petition for forfeiture of $5,500 alleged to be contraband.  We reverse and remand.

**FACTUAL SUMMARY**

Officer Ken Fay is a narcotics investigator with the Irving Police Department.  On March 4, 2005, a DEA agent, Henry Biddle, advised another narcotics investigator, Henry Schutt, that a confidential informant had told him that a 43-year-old white male known as "Tony" was dealing methamphetamine out of two storage stalls located at Carl Road and S.H. 183 in Irving.  The informant said that Tony drove a blue Ford Ranger truck and kept the methamphetamine in a tool box in the bed of the truck.  According to the informant, Tony received stolen property and merchandise purchased with stolen credit cards in exchange for the methamphetamine.  Tony stored the stolen property in the two storage stalls.  Investigator Schutt believed that the person known to the informant was Anthony Grazioso and he relayed this information to Sergeant Rubealcaba.  Both Schutt and Rubealcaba  knew that Grazioso drove a blue Ford Ranger truck and they knew him to

be a methamphetamine dealer.

Based on this information, Fay began conducting surveillance on the two storage units at 10:30 p.m. that same day. He observed Grazioso at one of the two storage stalls securing the door. Grazioso appeared extremely nervous and overly cautious as he left. They did not stop Grazioso when he left the area.

On March 7, 2005 around midnight, Fay again observed Grazioso at the storage unit. When Grazioso left, Fay followed him in an unmarked unit and observed him commit two traffic violations. Fay instructed a police officer in a marked unit to initiate a traffic stop. Grazioso pulled into a parking lot of an apartment complex and stopped his truck. The officers determined that Grazioso had an outstanding parole violation warrant and arrested him. They also impounded Grazioso's car and towed it to the police station where Fay and other officers performed an inventory search. Fay found 190.7 grams of methamphetamine and a syringe containing .4 grams of methamphetamine in the tool box. He also found syringes, a digital scale, a glass methamphetamine pipe, and methamphetamine distribution baggies in the truck. Additionally, the officers found the keys to the two storage stalls and a lease agreement showing that Grazioso was the lessee of the two stalls. That same evening, K-9 Officer Carmack ran his K-9 Rocky at the storage stalls and Rocky alerted on Grazioso's storage stalls.

During the early morning hours of March 8, 2005, Fay prepared a search warrant affidavit for the two storage stalls detailing these facts and attached to it an "affidavit of qualifications" from Officer Carmack which established both his and Rocky's qualifications. But Carmack's signature was not notarized when Fay presented the affidavit to the magistrate at 5:30 a.m. on March 8. Despite the unsworn affidavit of qualifications, the magistrate issued a search warrant for the two storage stalls. Fay and other officers searched the two storage stalls and found stolen property,

methamphetamine, marihuana, and $5,500 in U.S. currency inside of a drug ledger. Sometime on March 8 but after the search warrant had been executed, Fay had Carmack's affidavit of qualifications notarized.

The State filed a petition seeking forfeiture of the $5,500, three computers, and three firearms. Grazioso filed an answer claiming that he is the owner of the $5,500 and asserting that probable cause did not exist for seizure of the property. He did not contest seizure of the firearms and computers. Grazioso did not file a motion to suppress but he raised a number of objections during trial to the admissibility of the evidence seized during the inventory search and the execution of the search warrant. Further, the parties made the trial court aware that the suppression issues had been litigated in federal court.[1] The trial court found that the initial traffic stop was unlawful because probable cause did not exist to believe Grazioso had committed the offense of failure to maintain a single lane. It also found that Grazioso had lawfully parked the truck at his apartment complex, and therefore, the inventory search was invalid. The trial court determined that the portions of Fay's affidavit pertaining to the traffic stop and the inventory search had to be excluded from consideration. Additionally, the trial court found that Fay's statement that he had attached an affidavit of qualifications to his search warrant affidavit was false and made in reckless disregard

_____

[1] A federal grand jury indicted Grazioso for the offenses of possession of methamphetamine with intent to distribute, felon in possession of a firearm, and possession of a firearm in furtherance of a drug trafficking crime. Grazioso filed a motion to suppress the evidence seized as a result of the inventory search and execution of the search warrant. A federal district court initially granted the motion to suppress finding that the initial traffic stop was invalid and the search warrant affidavit was based on evidence seized as a result of the unlawful traffic stop. *United States v. Grazioso*, Criminal No. 3:06-CR-022-D, 2006 WL 1767677 (N.D. Tex. June 28, 2006). The federal district court subsequently granted the government's motion for rehearing and denied the motion to suppress. *United States v. Grazioso*, Criminal No. 3:06-CR-022-D, 2006 WL 2285585 (N.D. Tex. August 9, 2006). The federal district court found that even though the officers did not have probable cause to believe Grazioso had committed the traffic offense of failure to maintain a single lane, the stop was lawful because the police had probable cause to believe the pickup contained contraband. *Id.* at *5-6. With regard to the search warrant issues, the district court noted that Fay's affidavit falsely stated that the affidavit of qualifications was attached when it was not, but it held that even excluding the information about the canine sniff, the search warrant affidavit contained sufficient true facts giving the magistrate a substantial basis for concluding that probable cause existed. *Id.* at *6.

of the truth, and therefore, the portion of the affidavit referring to the canine sniff had to be excluded from the search warrant affidavit. Having excluded much of Fay's affidavit, the trial court found that the affidavit did not state probable cause and ruled the evidence seized as a result of the search inadmissible. Accordingly, the trial court entered judgment denying the State's petition for forfeiture of the $5,500.

## FORFEITURE

The State raises five issues challenging the trial court's conclusion that probable cause did not exist for the seizure of the money because it had been unlawfully seized. It argues that the evidence is legally and factually insufficient to support the trial court's finding of fact that: (1) Grazioso parked his truck in a parking space near his apartment; (2) the searches of Grazioso and his truck were illegal because they were the product of an illegal arrest; (3) the inventory search of Graziozo's truck was illegal; and (4) the affidavit supporting the search warrant was insufficient. To the extent the challenged factual findings are actually conclusions of law, the State alternatively contends that the trial court incorrectly applied the law to the facts. The State does not assert on appeal that the exclusionary rule[2] does not apply to civil forfeiture proceedings. Therefore, we assume that the rule applies and address only the issues raised by this appeal.

Forfeiture proceedings under Chapter 59 are civil in nature. TEX.CODE CRIM.PROC.ANN.

---

[2] Evidence obtained as the result of an unreasonable search and seizure is subject to exclusion in a criminal proceeding. *See* U.S.CONST. amend. IV; TEX.CONST. art. I, § 9; *Mapp v. Ohio*, 367 U.S. 643, 655, 81 S.Ct. 1684, 1691, 6 L.Ed.2d 1081 (1961); *Polk v. State*, 738 S.W.2d 274, 276 (Tex.Crim.App. 1987); TEX.CODE CRIM.PROC.ANN. art. 38.23(a)(Vernon 2005). The Texas Supreme Court has not decided whether the exclusionary rule applies to civil forfeiture proceedings. *See The State of Texas v. $217,590.00 in United States Currency*, 18 S.W.3d 631, 632 n.1 (Tex. 2000)(noting that it had not decided the issue, and assuming without deciding that the rule applies because the parties had presumed the rule applied to the case). This court has previously indicated that the exclusionary rule would apply unless the deterrent effect is satisfied by other means thereby leaving no reason to exclude the evidence in a civil action. *See $56,700.00 v. State*, 710 S.W.2d 65, 70 (Tex.App.--El Paso 1986), *rev'd on other grounds*, 730 S.W.2d 659 (Tex. 1987). Both the State and Grazioso have proceeded as though the exclusionary rule applies to this civil proceeding. Following the Supreme Court's lead, we assume without deciding that the rule applies. *See $217,590.00*, 18 S.W.3d at 632 n.1.

art. 59.05(a), (b)(Vernon 2006); *One 1995 Dodge Pickup, Bearing Texas License Plate # 2NJ-TM, V.I.N. 1B7HC16Y9SS379939 v. The State of Texas*, 119 S.W.3d 306, 307 (Tex.App.--Waco 2003, no pet.). Property which meets Section 59.01's definition of contraband is subject to seizure and forfeiture. TEX.CODE CRIM.PROC.ANN. art. 59.02(a). Pertinent to this appeal, contraband is defined as "property of any nature, including real, personal, tangible, or intangible, that is used or intended to be used in the commission of any felony under Chapter 481, Health and Safety Code." TEX.CODE CRIM.PROC.ANN. art. 59.01(2)(B)(i)(Vernon Supp. 2008). It is also defined as the proceeds gained from the commission of a felony listed in Paragraphs (A) or (B) of Section 59.01(2). TEX.CODE CRIM.PROC.ANN. art. 59.01(2)(C). Conviction of an underlying felony is not required under the forfeiture statute. TEX.CODE CRIM.PROC.ANN. art. 59.05(d).

In a forfeiture proceeding under Chapter 59, the State has the burden of proving by a preponderance of evidence that the property is subject to seizure. TEX.CODE CRIM.PROC.ANN. art. 59.05(b). The State is required to show that probable cause exists for seizing the property. TEX.CONST. art. I, § 9; *State v. $11,014.00*, 820 S.W.2d 783, 784 (Tex. 1991). To do this, the State must prove that there is a substantial connection between the property and the illegal activity. *See $11,014.00*, 820 S.W.2d at 784. This is accomplished when the State proves that it is more reasonably probable than not that the seized currency was either intended for use in, or derived from, a violation of the offenses listed in the forfeiture statute. *See Antrim v. State*, 868 S.W.2d 809, 812 (Tex.App.--Austin 1993, no writ).

*Standards of Review -- Validity of the Initial Traffic Stop and the Inventory Search*

Although the State articulates its issues on appeal as traditional challenges to the sufficiency of the evidence supporting the trial court's factual findings and to the propriety of the trial court's legal conclusions, we apply a different standard when considering the trial court's ruling on a motion

to suppress evidence as it concerns the admissibility of evidence.[3] There are three distinct suppressions issues in this case: (1) the validity of the initial traffic stop; (2) the validity of the inventory search; and (3) the sufficiency of the search warrant affidavit. The first two issues involve mixed questions of law and fact. The Texas Supreme Court has determined that we review mixed questions of law and fact arising in the civil forfeiture context under an abuse of discretion standard. *See State v. $217,590.00 in United States Currency*, 18 S.W.3d 631, 633-34 (Tex. 2000)(stating that abuse of discretion standard of review applies to trial court's determination that a person's consent to search was not valid). In applying this standard, a reviewing court does not engage in its own factual review, but decides whether the record supports the trial court's resolution of factual matters. *Id.*; *see Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). When, as in this case, the court issues findings of fact, we determine first whether the trial evidence, viewed in the light most favorable to the trial court's ruling, supports these fact findings. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex.Crim.App. 2006). We then review the trial court's legal ruling *de novo* unless the trial court's supported-by-the-record explicit fact findings are also dispositive of the legal ruling. *Id*. The Supreme Court's opinion in *State v. $217,590.00* does not specifically address the standard for reviewing a trial court's determination of reasonable suspicion or probable cause. In the context of a criminal case, we are instructed to review *de novo* those determinations. *See Guzman v. State,* 955 S.W.2d 85, 87 (Tex.Crim.App. 1997). There is no reason to apply a different standard in a civil forfeiture case.

---

[3] Grazioso did not file a pretrial motion to suppress evidence but rather litigated the suppression issue by making timely objections throughout trial to the admissibility of the evidence including the $5,500 seized during the execution of the search warrant. The trial court sustained those objections and ruled the evidence inadmissible because it had been unlawfully seized. Consequently, the court denied the State's petition for forfeiture. We conclude the same standard of review should be applied to suppression issues litigated during trial as is applied to a pretrial motion to suppress.

*The Traffic Stop*

In finding of fact number one, the trial court found that the State had offered evidence that a traffic stop was initiated after Grazioso drove his truck on the shoulder and failed to operate his truck in a single lane. However, the trial court went on to state in finding of fact[4] number four that the searches of Grazioso and his vehicle were the product of an illegal arrest because the police lacked probable cause to "approach, question, detain and/or request consent to search."

It is well established that when a traffic violation is committed within an officer's view, the officer may lawfully stop and detain the person for the traffic violation. *Walter v. State*, 28 S.W.3d 538, 542 (Tex.Crim.App. 2000). If an officer has a reasonable basis for suspecting that a person has committed a traffic offense, an officer may legally initiate a traffic stop. *Green v. State*, 93 S.W.3d 541, 544 (Tex.App.--Texarkana 2002, pet. ref'd ); *Texas Department of Public Safety v. Fisher*, 56 S.W.3d 159, 163 (Tex.App.--Dallas 2001, no pet.). The United States Supreme Court has held that a traffic stop will be deemed valid as long as a reasonable officer in the same circumstances could have stopped the car for the suspected offense. *Whren v. United States*, 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). The State is not required to prove that the individual actually committed a traffic violation, but only that the officer reasonably believed a violation was in progress. *Green*, 93 S.W.3d at 545; *Fisher*, 56 S.W.3d at 163. Therefore, "[i]n assessing whether the intrusion was reasonable, an objective standard is utilized: would the facts available to the officer at the moment of the seizure or search warrant a man of reasonable caution in the belief that the action taken was appropriate." *Davis v. State*, 947 S.W.2d 240, 243 (Tex.Crim.App. 1997).

Officer Kenneth Fay testified that Grazioso committed two traffic violations by failing to

---

[4] Although the trial court indicated that this is a finding of fact, the existence of probable cause is a conclusion of law.

maintain his vehicle in a single marked lane and by driving on the shoulder of the road. Section 545.060 of the Texas Transportation Code requires a driver operating a vehicle on a roadway divided into two or more clearly marked lanes to drive as nearly as practical within a single lane. TEX.TRANSP.CODE ANN. § 545.060 (Vernon 1999). Further, the driver may not move from the lane unless the movement can be made safely. *Id.* Courts have held that a violation of Section 545.060 occurs only when a vehicle fails to stay within its lane and such movement is not safe or is not made safely. *See Hernandez v. State*, 983 S.W.2d 867, 871 (Tex.App.--Austin 1998, pet. ref'd). Citing *Hernandez*, Grazioso argues that the trial court's legal conclusion is correct because the State failed to offer any evidence that his movement was unsafe. We agree with Grazioso that the State did not offer any evidence indicating that Grazioso's movement out of his lane was unsafe. Thus, the State did not establish that an officer would reasonably believe that a violation of Section 545.060 had occurred. That does not end the inquiry, however, because Officer Fay also testified that he observed a separate traffic violation when Grazioso drove on the shoulder.

Section 545.058 of the Transportation Code permits the operation of a vehicle on an improved shoulder to the right of the main traveled portion of a roadway if the operation is necessary and may be done safely, but only: (1) to stop, stand, or park; (2) to accelerate before entering the main traveled lane of traffic; (3) to decelerate before making a right turn; (4) to pass another vehicle that is slowing or stopped on the main traveled portion of the highway, disabled, or preparing to make a left turn; (5) to allow a faster traveling vehicle to pass; (6) as permitted or required by an official traffic control device; or (7) to avoid a collision. TEX.TRANSP.CODE ANN. §545.058. The undisputed evidence at trial showed and the trial court found that Grazioso drove on the shoulder while exiting the highway and there is no evidence that any of the circumstances which would permit operation on the shoulder exist here. Consequently, an officer could reasonably believe that a

violation of Section 545.048 had occurred. The trial court erred in concluding that the traffic stop was unlawful and that all evidence seized as a result of the stop was inadmissible.

*The Inventory Search*

We next consider the trial court's determination that the inventory search was invalid and therefore the evidence seized during that search is inadmissible. An inventory search is constitutionally permissible as long as it is not a "ruse for a general rummaging in order to discover incriminating evidence." *Florida v. Wells*, 495 U.S. 1, 4, 110 S.Ct. 1632, 109 L.Ed.2d 1 (1990). An inventory search is permissible under the federal and state constitutions if it is conducted pursuant to a lawful impoundment. *South Dakota v. Opperman*, 428 U.S. 364, 375-76, 96 S.Ct. 3092, 3100, 49 L.Ed.2d 1000 (1976); *Benavides v. State*, 600 S.W.2d 809, 810 (Tex.Crim.App. [Panel Op.] 1980). Inventory searches are valid when a vehicle is impounded by police and its contents are inventoried using a standardized procedure for the purposes of protecting (1) the owner's property while it remains in police custody, (2) the police against claims or disputes over lost or stolen, property, and (3) the police or the public from potential danger. *Opperman*, 428 U.S. at 369. The State bears the burden of proving that an impoundment is lawful and may satisfy its burden by showing that (1) the driver was arrested, (2) no alternatives other than impoundment were available to ensure the automobile's protection, (3) the impounding agency had an inventory policy, and (4) the policy was followed. *Garza v. State*, 137 S.W.3d 878, 882 (Tex.App.--Houston [1st Dist.] 2004, pet. ref'd).

It is undisputed that after the initial stop, Grazioso was arrested pursuant to a warrant for a parole violation and his truck was impounded pursuant to a standard policy. The trial court found that the impoundment was unlawful because Grazioso had legally parked his truck in a parking space near his own apartment. We have reviewed the entire record and find no evidence to support the trial

court's factual finding. Grazioso did not testify or offer any evidence establishing that he lived at the apartment complex or that he parked near his own apartment. The trial court erred in concluding that the impoundment was unlawful. Therefore, the evidence obtained as a result of the subsequent inventory search should not have been suppressed.

*Standard of Review -- Sufficiency of the Search Warrant Affidavit*

The Texas Supreme Court has not addressed the standard of review to be applied when determining the validity of an affidavit supporting the issuance of a search warrant. We therefore will apply the standard used in criminal cases.

No search warrant shall issue in Texas unless sufficient facts are presented through a sworn affidavit to satisfy the issuing magistrate that probable cause exists for its issuance. TEX.CODE CRIM.PROC.ANN. art. 18.01(b)(Vernon Supp. 2008); *see also Jones v. State*, 833 S.W.2d 118, 123-24 (Tex.Crim.App. 1992). The facts must illustrate: (1) that a specific offense has been committed, (2) that the specifically described property or items that are to be searched for or seized constitute evidence of that offense or evidence that a particular person committed that offense, and (3) that the property or items constituting evidence to be searched for or seized are located at or on the particular person, place, or thing to be searched. TEX.CODE CRIM.PROC.ANN. art. 18.01(c). Whether the facts stated in the affidavit are adequate to establish probable cause depends on the "totality of circumstances." *Ramos v. State*, 934 S.W.2d 358, 362-63 (Tex.Crim.App. 1996). The magistrate must have sufficient facts upon which to conclude that there is a fair probability (not an actual showing) that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983); *Guerra v. State*, 760 S.W.2d 681, 688 (Tex.App.--Corpus Christi 1988, pet. ref'd). The affidavit must be interpreted in a common-sense, realistic manner, and the magistrate may draw reasonable inferences from facts and

circumstances alleged in the affidavit. *Ellis v. State*, 722 S.W.2d 192, 196 (Tex.App.--Dallas 1986, no pet.); *Belton v. State*, 900 S.W.2d 886, 893-94 (Tex.App.--El Paso 1995, pet. ref'd). The reviewing court should accord those inferences great deference. *Ramos*, 934 S.W.2d at 363. Reviewing courts should not invalidate search warrants by interpreting affidavits in a hypertechnical manner. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331; *Hackleman v. State*, 919 S.W.2d 440, 447 (Tex.App.--Austin 1996, pet. ref'd, untimely filed). If the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more, and the affidavit should be deemed sufficient. *Gates*, 462 U.S. at 236, 103 S.Ct. at 2331. There are no credibility determinations to be made by the trial court in examining the sufficiency of an affidavit to establish probable cause because probable cause to support the issuance of the warrant is determined from the four corners of the affidavit alone. *Tolentino v. State*, 638 S.W.2d 499, 501 (Tex.Crim.App. 1982). Thus, appellate courts review *de novo* whether the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing. *Lane v. State*, 971 S.W.2d 748, 751 (Tex.App.--Dallas 1998, pet. ref'd).

In *Franks v. Delaware*, the United States Supreme Court held that if a defendant established by a preponderance of the evidence that a false statement made knowingly, intentionally, or with reckless disregard for the truth was included in a probable cause affidavit, and if it was material to establish probable cause, the false material must be excised from the affidavit. *Franks v. Delaware*, 438 U.S. 154, 164-65, 98 S.Ct. 2674, 2680-81, 57 L.Ed.2d 667 (1978); *Harris v. State*, 227 S.W.3d 83, 85 (Tex.Crim.App. 2007). If the remaining content of the affidavit does not then still establish sufficient probable cause, the search warrant must be voided and the evidence resulting from that search excluded. *Franks*, 438 U.S. at 155-56; *Harris*, 227 S.W.3d at 85. A misstatement in an affidavit that is the result of simple negligence or inadvertence, as opposed to reckless disregard for

the truth, will not make the warrant invalid. *See Dancy v. State*, 728 S.W.2d 772, 783 (Tex.Crim.App. 1987). At a *Franks* hearing, the trial judge is owed great deference as sole fact finder and judge of the witnesses' credibility. *Janecka v. State*, 937 S.W.2d 456, 462 (Tex.Crim.App. 1996).

It is undisputed that Fay falsely stated that he had attached Officer's Carmack's affidavit to his own as Carmack's unsworn statement did not constitute an affidavit. We do not reach the question whether Fay's statement was made, as the trial court found, with reckless disregard for the truth, or whether it was the advertent product of putting together a search warrant packet at 5:30 in the morning because the remaining portions of the affidavit provided sufficient information for a magistrate to conclude that probable cause existed to believe that contraband would be found in the two stalls. The search warrant affidavit related the details of the confidential informant's tip and the corroboration of the tip through surveillance. After Grazioso was arrested, the officers further corroborated the tip in that methamphetamine was found in the tool box where the informant said that it was stored. The officers also discovered paraphernalia which supported the informant's claim that Tony was dealing methamphetamine out of the storage units. And Grazioso was connected to the storage units through discovery of the lease agreement. When all of these facts are considered together, even without the results of the canine sniff, the affidavit provided sufficient facts for a magistrate to conclude there was a fair probability that contraband or evidence of a crime would be found in the storage units.

We sustain Issues One through Five and reverse the trial court's ruling which sustained Grazioso's objections to the admissibility of the evidence seized as a result of the traffic stop, the inventory search, and the execution of the search warrant. We reverse the trial court's judgment denying the State's petition for forfeiture of the $5,500 seized during the execution of the search

warrant. The State requests that we render judgment forfeiting the $5,500 to the State and in accordance with its local agreement the Irving Police Department. The trial court, because it suppressed nearly all of the evidence including the $5,500, found that the State had not proven probable cause existed for the seizure of the property. Thus, the trial court made a negative finding on an issue on which the State had the burden of proof, namely, the State's burden to prove by a preponderance of the evidence that there is a substantial connection between the $5,500 and the illegal activity. *See $11,014.00*, 820 S.W.2d at 784. The State has not raised any issue on appeal specifically challenging the trial court's negative finding in this regard. Under these circumstances, rendition of judgment in favor of the State is inappropriate. We therefore remand the cause to the trial court for a new trial.

April 16, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., not participating