FONDREN CONSTRUCTION CO.,
INC. and Robert G. Lubkeman,
Appellants,

v.

BRIARCLIFF HOUSING DEVELOP-
MENT ASSOCIATES, INC., DPMC–
Briarcliff, L.P., and John Deere Com-
pany, Appellees.

No. 01–04–01293–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

April 13, 2006.

Michael C. Falick, Rothfelder & Falick, L.L.P., Houston, for appellants.

James Bradley Whitus, Todd M. Lonergan, William M. Coats, Coats, Rose, Yale, Ryman & Lee, P.C., David D. Peden, Porter & Hedges, L.L.P., Richard D. Daly, Gardere, Wynne, Sewell & Riggs, L.L.P., Houston, Jeremy Martin, Gardere, Wynne, Sewell & Riggs, LLP., Dallas, for appellees.

Panel consists of Justices TAFT, HIGLEY, and BLAND.

## OPINION

JANE BLAND, Justice.

Fondren Construction Co., Inc. and Robert Lubkeman (collectively "Fondren") appeal from a summary judgment rendered on behalf of appellee John Deere

Company ("John Deere"), and a motion for judgment rendered in favor of appellees Briarcliff Housing Development Associates, Inc. ("BHDA") and DPMC–Briarcliff, L.P. ("DPMC") during a bench trial. Fondren sued for breach of contract, unjust enrichment, foreclosure of lien interest, fraud and fraud in the inducement, negligent misrepresentation, and a right to recover on a payment bond, alleging it was not paid in full for construction subcontracting work performed on the Briarcliff property. On appeal, Fondren contends the trial court erred in granting summary judgment in favor of John Deere because it presented improper summary judgment evidence and the bond it relied on fails to meet the requirements of the Texas Property Code. Fondren further contends the trial court erred in granting judgment in favor of BHDA and DPMC at the close of its case because the evidence introduced during the bench trial thus far proved Fondren's claims. We affirm.

## BACKGROUND

In January 1999, Westbrook Construction contracted with BHDA to perform services at the Briarcliff Apartments. John Deere, acting as surety, filed a payment bond covering the work to be performed under the contract. Around the same time, Lubkeman contracted with Westbrook, subject to Westbrook's contract with BHDA, to perform supervisory work in an individual capacity and to perform contracting work in his capacity as owner of Fondren Construction Company. Westbrook paid Fondren initially. At some point, Westbrook stopped work, and another contractor completed the work at Briarcliff. At the time, Westbrook owed

additional amounts to Fondren. After Westbrook stopped work, Fondren alleges BHDA and DPMC promised full payment of the amounts due under the contracts with Westbrook. Fondren further contends this promise encouraged it to continue work on the property for BHDA and DPMC.

In February 2000, Lubkeman filed liens against the Briarcliff property on behalf of himself and Fondren. Lubkeman testified that none of the work he performed for which he demands payment occurred after he filed the liens. In October 2000, Lubkeman sued BHDA and Westbrook. In August 2003, he amended the petition, removing Westbrook as a party to the suit, adding DPMC and John Deere as parties, and adding a cause of action on the payment bond.[1] John Deere moved for summary judgment, which the trial court granted. The case proceeded to a bench trial. After Fondren rested, BHDA and DPMC moved for judgment, which the trial court also granted. Fondren appeals from both decisions.

## THE PAYMENT BOND

Fondren contends that the payment bond is not a valid defense to either John Deere's motion for summary judgment or DPMC and BHDA's motion for judgment because the bond fails to comply with the requirements of the Property Code. Because the validity of the payment bond affects the merit of Fondren's claims against all of the appellees in this case, we address Fondren's attacks as to the bond first. *See* TEX. PROP.CODE ANN. § 53.201 (Vernon Supp.2005) ("if a valid bond is filed, a claimant may not file suit against

---

1. The record contains an original petition filed in February 2002, asserting the same causes of action against BHDA, but with a different cause number. There is no indication, either in the record or in the briefs, as to

any disposition relating to that cause number. The fourth amended petition, along with the orders, judgments, and notice of appeal, all bear the 2000 cause number.

the owner or the owner's property"); *see also Laughlin Envtl., Inc. v. Premier Towers, L.P.*, 126 S.W.3d 668, 675 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (explaining how compliance with statutory bond requirements affects underlying lien claims).

First, Fondren argues John Deere's bond does not prominently display contact information as Texas Property Code section 53.202(6) requires. *See* TEX PROP. CODE ANN. § 53.202(6) (Vernon Supp.2005). John Deere issued the bond in this case in January 1999. The Legislature added subsection 6 to the statute in May 2001, and it did not take effect until September 1, 2001. *See* Act of May 15, 2001, 77th Leg., R.S., ch. 380, § 5, 7, 2001 Tex. Gen. Laws 706, 707–08 (amended nonsubstantively 2005) (current version at TEX. PROP. CODE ANN. § 53.202(6) (Vernon Supp. 2005)). The statutory contact information requirements did not exist when John Deere filed the bond; thus, no fact issue exists regarding John Deere's compliance with subsection 6.

Second, Fondren relies on section 53.202(1) of the Property Code, which requires that the penal sum of the bond be at least equal to the original contract amount. *See* TEX. PROP.CODE ANN. § 53.202(1). Because the penal sum sets the financial limits of the surety's obligations, it is the most material aspect of a payment bond. *Laughlin*, 126 S.W.3d at 674 (citing *Sherwin–Williams Co. v. Am. Indem. Co.*, 504 S.W.2d 400, 402 (Tex. 1973)). Here, Fondren sued John Deere on a payment bond it executed on January 11, 1999. The bond covers the contract entered into between Westbrook and Briarcliff on January 12, 1999. The original amount of the contract between Westbrook and Briarcliff is $4,224,485.00, and the amount of the payment bond issued by John Deere is $4,224,485.00—exactly equal to the amount of the contract. The contract and the bond are evidence that the bond is in a penal sum equal to the total of the original contract, and Fondren did not offer any controverting evidence. Thus, no fact issue exists regarding compliance with subsection 1 of the statute. We hold that the payment bond complied with the Property Code's requirement with respect to section 53.202(1).

## SUMMARY JUDGMENT

As its sole ground for summary judgment, John Deere contends that Fondren cannot recover on the valid payment bond because Fondren failed to bring suit within the one year allowed by the Property Code. *See* TEX. PROP.CODE ANN. § 53.208 (VERNON 1995) (setting time limit for suit on bond). Fondren responds that the affidavit testimony of David Styers, a vice president for John Deere, is improper summary judgment evidence, and that the bond does not cover the work at issue in this case. Fondren re-urges these arguments on appeal.

### A. Standard of Review

We review the trial court's ruling on a summary judgment motion de novo. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex.2003). We view the evidence in the light most favorable to the non-movant, making all reasonable inferences and resolving all doubts in the non-movant's favor. *Sw. Elec. Power Co. v. Grant*, 73 S.W.3d 211, 215 (Tex.2002). The movant for a traditional summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c); *Haase v. Glazner*, 62 S.W.3d 795, 797 (Tex.2001). A defendant seeking summary judgment must negate as a matter of law at least one element of each of

the plaintiff's theories of recovery or plead and prove as a matter of law each element of an affirmative defense. *Johnson County Sheriff's Posse v. Endsley,* 926 S.W.2d 284, 285 (Tex.1996). If the movant can show it is entitled to judgment as a matter of law, the burden shifts to the non-movant to present evidence raising a fact issue to defeat the motion for summary judgment. *Flores v. N. Am. Techs. Group, Inc.,* 176 S.W.3d 442, 446 (Tex.App.-Houston [1st Dist.] 2004, pet. denied).

### B. *Affidavit of Interested Party*

Fondren contends Styers's affidavit is improper summary judgment evidence because Styers is an interested witness, and his affidavit contains conclusory statements. A trial court may grant summary judgment based on the uncontroverted testimony of an interested witness if the testimony is "clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted." Tex.R. Civ. P. 166a(c).

Styers avers in the affidavit that he is the vice president of the company formerly known as John Deere, and is the custodian of the records pertaining to this case. He further avers that the payment bond and contract offered as summary judgment evidence are true and correct copies of the bond and contract in issue in this case. Fondren offered no argument or summary judgment evidence to suggest this testimony is not clear, positive, direct, free from contradictions, and readily controvertible. *See Casso v. Brand,* 776 S.W.2d 551, 558 (Tex.1989) ("could have been readily controverted" means "testimony at issue can by its nature be effectively countered by opposing evidence"); *Larson v. Family Violence & Sexual Assault Prevention Ctr. of S. Tex.,* 64 S.W.3d 506, 513 (Tex.App.-Corpus Christi 2001, pet. denied) (holding

affidavit attesting to authenticity of letter was proper summary judgment evidence). If Fondren had evidence to contradict Styers's claims regarding his position at John Deere, or the accuracy of the bond and contract, then our summary judgment rules place the burden on Fondren to come forth with such evidence once John Deere moved for a summary judgment. Furthermore, Fondren fails to demonstrate how any of the factual statements made in Styers's affidavit are conclusory. We thus hold that Fondren fails to raise a fact issue with regard to Styers's affidavit.

### C. *Failure to Bring Suit Within the Limitations Period*

John Deere contends Fondren's suit against it is barred by the existence of a valid payment bond and its corresponding statute of limitations. An original contractor who has a written contract with the owner may furnish a bond for the benefit of claimants, such as subcontractors who are not paid for their work. Tex. Prop. Code Ann. § 53.201(a). The bond protects anyone with a claim perfected in a manner prescribed for fixing a lien under subchapter C of the Code. *See* Act of May 24, 1983, 68th Leg., R.S., ch. 576, § 1, 1983 Tex. Gen. Laws 3475, 3552 (amended 1999) (current version at Tex. Prop.Code Ann. § 53.205(a)(1) (Vernon Supp.2005)). Section 53.052 allows a claimant to perfect a claim by filing an affidavit with the county clerk no later than the fifteenth day of the fourth month after the day on which the indebtedness accrues. Tex. Prop.Code Ann. § 53.052(a) (Vernon Supp.2005). Indebtedness to a subcontractor accrues on the last day of the last month in which the labor was performed or material furnished. *Id.* § 53.053(c). A claimant may sue the surety on a bond "if his claim remains unpaid for 60 days after the claimant perfects the claim." Tex. Prop.Code Ann. § 53.208(a) (Vernon 1995). "If the bond is

recorded at the time the lien is filed, the claimant must sue on the bond within one year following perfection of his claim." *Id.* § 53.208(d).

Here, Fondren failed to sue on the bond within the statutorily allowed period. Fondren alleges that the work performed at Briarcliff ended in December 1999, and thus the indebtedness accrued on December 31, 1999. *See* TEX. PROP.CODE ANN. § 53.053(c) (Vernon Supp.2005). Fondren perfected its claim by filing affidavits with the county clerk on February 24, 2000, within the time allowed for perfection under the statute. *See id.* § 53.052(a). John Deere recorded its bond on January 13, 1999; thus, Fondren had one year from February 24, 2000 to file suit on the bond. TEX. PROP.CODE ANN. § 53.208(d) (Vernon 1995). Fondren did not sue on the bond, or add John Deere as a party to the suit, until August 18, 2003, well after the time limit. We therefore hold that the suit against John Deere is barred by the statute of limitations. *Compare Sherwin–Williams,* 504 S.W.2d at 401 (joinder of surety after time limit set by statute would have been untimely if statute applied), *with Mathews Constr. Co. v. Jasper Hous. Constr. Co.,* 528 S.W.2d 323, 328 (Tex.Civ. App.-Beaumont 1975, writ ref'd n.r.e.) (where amended complaint filed after limitations period added action on bond, but surety had been named in original pleading filed within limitations period, suit on bond was timely).

Fondren argues that appellees conspired to withhold the existence of the bond despite his repeated request that they produce it. However, the bond was on file in the county records beginning January 13, 1999, before Fondren filed its liens. "An instrument that is properly recorded in the proper county is notice to all persons of the existence of the instrument." *See* Act of May 24, 1983, 68th Leg., R.S., ch. 576, § 1, 1983 Tex. Gen. Laws 3475, 3495–96 (amended 2003) (current version at TEX. PROP.CODE ANN. § 13.002 (Vernon 2004)). Thus, the appellees' failure to produce the bond when requested does not affect the applicability of the bond to this case. Fondren's failure to add John Deere as a party within one year of perfecting its claim bars its suit against John Deere.

## D. *Applicability of Bond to This Case*

Fondren's final argument against summary judgment is that a fact issue remains concerning whether the bond attached to John Deere's motion for summary judgment applies to Fondren's claims in this case. In its fourth amended petition, Fondren added John Deere as a defendant, and added a cause of action entitled "Suit on Bond." Fondren asserts that "[r]ecently Lubkeman learned that John Deere provided a bond for the subject property.... Fondren and Lubkeman therefore bring this suit against John Deere and seek payment as required under the terms of the bond."

The bond covers work done pursuant to a January 12, 1999 contract between Westbrook and Briarcliff. Fondren claims the work for which it was not paid began during 1998, and therefore the burden is on John Deere to demonstrate the applicability of the bond to this case. First, though Fondren asserted, both in its petition and at oral argument, that the work for which it demands payment began in 1998, it failed to present any summary judgment evidence to that effect. The only contract in the record for work to be performed by Fondren for Westbrook is a contract dated January 13, 1999, which is made subject to the contract between Westbrook and Briarcliff entered into on January 12, 1999, for which John Deere filed a bond. There is no evidence to suggest that Fondren performed any work

for Briarcliff prior to 1999. Even if the bond did not cover the work for which Fondren is demanding payment, then Fondren could not recover on the bond, and John Deere would not be a proper party to this suit because John Deere would not be a party to any contracts for work performed by Fondren before the date of the bond. Fondren did not sue John Deere for anything other than the bond for which John Deere is the surety. We therefore hold this argument fails to raise a fact issue as to Fondren's claim for payment against John Deere.

Accordingly, we hold the trial court did not err in granting summary judgment in favor of John Deere.

## MOTION FOR JUDGMENT

At the close of Fondren's case, BHDA and DPMC moved for a "directed verdict" on the grounds that Fondren's suit is barred by the Property Code because a valid bond was on file for the work at issue, no evidence established any of the alleged misrepresentations were made by either defendant, and no evidence established intent to commit fraud. The trial court granted the motion.

### A. Standard of Review

■■■ We construe BHDA and DPMC's motion as a motion for judgment rather than a directed verdict, because they brought it after the plaintiffs rested in a bench trial. See Qantel Bus. Sys., Inc. v. Custom Controls Co., 761 S.W.2d 302, 303 (Tex.1988); Ashcreek Homeowner's Ass'n, Inc. v. Smith, 902 S.W.2d 586, 587 n. 1 (Tex.App.-Houston [1st Dist.] 1995, no writ). As the arbiter of factual and legal issues, the judge in a nonjury trial has the authority to rule on both the legal and factual sufficiency of the plaintiff's evidence on the defendant's motion for judgment, after hearing only the plaintiff's evidence. Qantel, 761 S.W.2d at 304. On appeal, the legal and factual sufficiency of the evidence to support the judgment can be challenged as in any other nonjury case. Ashcreek, 902 S.W.2d at 587. When we review legal sufficiency, we review the evidence in a light that tends to support the finding of the disputed facts and disregard all evidence and inferences to the contrary. Lee Lewis Constr., Inc. v. Harrison, 70 S.W.3d 778, 782 (Tex.2001). When we review factual sufficiency, we conduct a neutral review of all the evidence. Cain v. Bain, 709 S.W.2d 175, 176 (Tex.1986). We reverse for factual insufficiency only if the ruling is so against the great weight and preponderance of the evidence as to be manifestly erroneous or unjust. Minucci v. Sogevalor, S.A., 14 S.W.3d 790, 794 (Tex. App.-Houston [1st Dist.] 2000, no pet.).

### B. Effect of Bond on Fondren's Claims

■■■ As owners of the property on which the work at issue was performed, BHDA and DPMC contend the existence of a valid payment bond covering the work in question bars Fondren's claims against them. If a payment bond meets statutory requirements, a claimant may not file lien claims against a property owner or seek foreclosure of the lien on the owner's property. See TEX. PROP.CODE ANN. § 53.201(b) (Vernon Supp.2005) ("if a valid bond is filed, a claimant may not file suit against the owner or the owner's property"); Laughlin, 126 S.W.3d at 671. "A payment bond, executed by an original contractor, is substituted for whatever other relief might be obtained by subcontractors and those furnishing materials and labor against the owner and his property." Sentry Ins. Co. v. Radcliff Materials of Tex., Inc., 687 S.W.2d 437, 440 (Tex.App.-Houston [14th Dist.] 1985, no writ) (citing Fid. & Deposit Co. of Md. v. Felker, 469 S.W.2d 389 (Tex. 1971)).

The bond in this case satisfies the requirements of the statute. The bond was recorded in January 1999 pursuant to a contract between Westbrook, the general contractor, and BHDA, the property owner. Lubkeman testified that the BHDA project came up in 1999, that he entered into contracts with Westbrook to do work at BHDA's property, and that all the work for which he claims he was not paid was performed prior to the filing of the liens in February 2000. He further testified that he "imagined" the bond in this case covers the work he performed on BHDA's property. *See* TEX. PROP.CODE ANN. § 53.201(b). Though Fondren claims the bond was kept a secret, it had been recorded in the public records before Fondren filed its lien on the property—thus, Fondren had constructive notice of its existence. Under the Property Code, the bond substituted for any other relief Fondren might seek against the property owners. *Id.* Accordingly, we hold that the trial court did not err in finding that the bond barred Fondren's claims against the property owners BHDA and DPMC.

■ In addition, the trial court properly entered judgment for BHDA and DPMC because Fondren failed to establish its negligent misrepresentation, fraud, and unjust enrichment claims against them. Lubkeman testified that Larry Hill, the owner of Westbrook, asked Fondren to continue work on the Briarcliff project despite Westbrook's problems. Lubkeman testified that after Westbrook left the job, he continued working for HRI, a DPMC-related entity. He testified that after HRI left, Davis Penn, the president of DPMC, told Fondren and some other subcontractors that "all bills would be paid" if they continued to work at Briarcliff. Lubkeman testified that he would not have continued working if he had not been given such assurances. Lubkeman, however, admitted that Fondren received full payment from DPMC and BHDA for the work he performed after Westbrook's departure, including while working for HRI. Fondren's contention is that Penn's assurance amounted to a promise to pay amounts Westbrook owed to it, and that it would not have continued working on the Briarcliff project if not for such assurances.

■ A person commits fraud by (1) making a false, material misrepresentation (2) that the person either knows to be false or asserts recklessly without knowledge of its truth (3) with the intent that the misrepresentation be acted upon, (4) and the person to whom the misrepresentation is made acts in reliance upon it (5) and is injured as a result. *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 47–48 (Tex.1998). Here, Fondren's trial theory was that Penn's statement that "all bills would be paid" constituted a material misrepresentation that DPMC would pay Fondren's bills owed by Westbrook in connection with the Briarcliff property. We hold the trial court reasonably could have concluded that Property Code section 53.201(b) precludes any suit for fraud against BHDA and DPMC based on testimony at trial, because Lubkeman admitted that the work he performed was covered by the bond. If the fraud allegation seeks recovery for amounts owed for work performed that is covered by the bond, then the bond is Fondren's exclusive remedy. *See* TEX. PROP.CODE ANN. § 53.201(b). Moreover, BHDA and DPMC paid all monies they owed to Fondren. It is undisputed that Fondren's unpaid balance was pursuant to a contract with Westbrook; thus, any damages Fondren incurred happened before Hill's alleged assurances. Therefore, the trial court reasonably could have concluded that Hill's representation referred to amounts owed by the defendants, not

Westbrook, and could not be a proximate cause of the damages Fondren had already incurred as a result of Westbrook's failure to pay on its contract with Fondren.

■ The elements of a negligent misrepresentation claim are: (1) the defendant made a representation in the course of its business, or in a transaction in which it had a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Roof Sys., Inc. v. Johns Manville Corp.*, 130 S.W.3d 430, 438 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (citing *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991)). As with Fondren's fraud claim, after hearing Fondren's evidence at trial, the trial court reasonably could have concluded that no representation by DPMC was false or caused any losses to Fondren. DPMC paid Fondren all the money it owed for work done on behalf of DPMC and on behalf of its related entity, HRI. We therefore hold that the trial court did not err in granting judgment against Fondren on its negligent misrepresentation claim.

■ Recovery under a claim of unjust enrichment requires a plaintiff to prove that the defendant benefited from him through fraud, duress, or the taking of undue advantage. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex.1992). Here, DPMC paid Fondren in full for the work it performed for DPMC, and Fondren presents no evidence that DPMC was unjustly enriched by work Fondren performed pursuant to its contract with Westbrook. Thus, the trial court did not err in granting judgment against Fondren on its unjust enrichment claim.

Accordingly, we hold the trial court did not err in entering judgment against Fondren on its claims against BHDA and DPMC.

## CONCLUSION

The trial court properly granted summary judgment in favor of John Deere because Fondren filed suit on the payment bond against John Deere outside the limitations period set forth in the Property Code. The trial court properly entered judgment in favor of BHDA and DPMC because the evidence presented by Fondren at the bench trial supports the existence of a valid payment bond covering the work Fondren performed, and thus the Property Code precludes a suit against the property or the property owner. Moreover, the trial court reasonably could have concluded that Fondren's evidence at trial failed to prove at least one element of each of its causes of action. We affirm the judgment of the trial court.