

**NUMBER 13-13-00484-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

---

**THE STATE OF TEXAS,**                                          **Appellant,**

**v.**

**ONE (1) 2004 LINCOLN
NAVIGATOR, VIN # 5LM
FU27RX4LJ28242**                                          **Appellee.**

---

### On appeal from the 105th District Court
### of Nueces County, Texas.

---

## MEMORANDUM OPINION
### Before Justices Rodriguez, Garza and Longoria
### Memorandum Opinion by Justice Longoria

This appeal arises out of a civil forfeiture action. *See* TEX. CODE CRIM. PROC. ANN. arts. 59.01–.14 (West, Westlaw through 2013 3d C.S.). Police arrested Miguel Herrera after discovering a firearm in Herrera's 2004 Lincoln Navigator (the vehicle), which the

police subsequently seized. The State later filed a petition seeking to forfeit the vehicle to the State. *See id.* art. 59.02(a). On Herrera's motion, the trial court suppressed all the evidence gained from the search and seizure of the vehicle and issued a separate judgment that denied the State's petition for forfeiture and ordered possession and title to the vehicle returned to Herrera. We affirm.

## I. BACKGROUND

### A. Background Facts

Texas Department of Public Safety (DPS) Officer Stephen West testified that a "cooperating defendant" informed him that he had arranged to meet and buy drugs from a man at a certain time that same night in the parking lot of Rack Daddy's, a pool hall in Corpus Christi, Texas. The source did not know the dealer's name, but he told Officer West that the dealer was a Hispanic male who would be driving a white SUV with "shiny rims" and transporting "an unknown amount of drugs" for sale and that he would be armed. The tipster was a recently-arrested person with charges pending against him. None of the officers involved had ever used the source before and could not vouch for his veracity.

A group of DPS officers under the supervision of DPS Lieutenant Guadalupe Ramon immediately placed the parking lot of Rack Daddy's under surveillance. Approximately twenty minutes later, which was around the time specified by the source, Herrera drove into the parking lot in the vehicle and parked but remained in the driver's seat. Officer West drove by Herrera's car with the source in his front seat; Officer West testified without objection that the source identified Herrera as the man that he had arranged to meet to buy drugs. After the source identified Herrera, Lieutenant Ramon

2

and three other officers approached the vehicle. Lieutenant Ramon and Officer Clayton Cohea testified that they did not observe Herrera commit any criminal act, including any traffic violation. Lieutenant Ramon testified that he made eye contact with Herrera as he approached the car and witnessed Herrera make a "quick gesture down towards the floorboard." Lieutenant Ramon testified that he "asked this individual to get out of his vehicle," but he did not remember exactly the words he used. Only Lieutenant Ramon testified about Herrera's alleged furtive movements. Officer Cohea testified that he did not witness any furtive movements, but he stated that the car's windows were tinted and Lieutenant Ramon was closer to the car at the time. None of the officers drew their weapons.

Lieutenant Ramon and another officer patted Herrera down while Officer Cohea searched the "reachable area" in the vehicle around the driver's compartment. Officer Cohea discovered a firearm in a hidden compartment that had been cut into the floor of the car near the center console. The officers arrested Herrera for being a felon in possession of a firearm. The officers impounded the car, returned it to their headquarters, and conducted a more thorough search. The search disclosed another hidden compartment in the center console which contained multiple baggies of cocaine, several pills, and an additional magazine for the pistol. The source was never named in any of the proceedings in the trial court.

## B. Proceedings Below

All criminal charges against Herrera were dismissed, but the State filed a petition asking the trial court to order the vehicle forfeited to the State. *See id.* art. 59.02. The trial court originally signed a default judgment in favor of the State, but Herrera

3

subsequently filed a motion for new trial. In his motion, Herrera asserted that he had not been personally served with the forfeiture petition even though he had been incarcerated in the Nueces County Jail during the relevant time. The trial court granted Herrera's motion for a new trial. The State successfully petitioned this Court for a writ of mandamus ordering the trial court to state its reasons, and the trial court issued an amended order. *In re State ex rel. Skurka*, No. 13-13-00086-CV, 2013 WL 865426, at *5 (Tex. App.— Corpus Christi Mar. 4, 2013, orig. proceeding) (mem. op.).

Herrera later filed a motion to suppress all of the evidence gained from the search, seizure, and arrest on the basis that it:

> was seized as the result of an illegal traffic stop, arrest, or search in violation of the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Article 1, Sections 9, 10, [and] 19 of the Texas Constitution, Articles 1.04, 1.05, 1.06, 38.23, and chapter 59 of the Texas Code of Criminal Procedure.

At the beginning of the trial, the trial judge asked the parties to confirm that they were there for a trial on the merits, and both parties agreed. The trial judge also inquired whether "the suppression issue will be carried with the trial on the merits of the seizure," and both sides again agreed. After the trial court heard live testimony from five witnesses, the State announced that "[w]e rest, Your Honor, no more witnesses." Herrera's counsel rose and made an oral motion to the trial court:

> At this point in time, Your Honor, before the Defense presents our case, we would ask for the Court to consider ruling upon the motion to suppress. I think that's an adequate remedy at this point in order to decide if we need to go on. I guess it's an oral request for summary judgment at this point. There's no material issue of fact here. It's all a legal matter whether or not the search was in fact valid. If you'd like to argue it at this point, I'm ready to do so.

One of the State's attorneys responded that, "[i]f [appellant] wants to argue it at this point,

4

that's fine." After both sides made their closing arguments with respect to the oral motion, the trial judge made the following oral ruling from the bench:

> To the extent necessary, the Court treats this as an oral motion for summary judgment, the motion to suppress as well. And in light of the issues on whether or not suppression is proper in a forfeiture proceeding, I'm going to make some other findings as well. I'm going to grant the summary judgment with regard to the illegality of the stop, contact and/or search. I'm granting the motion to suppress. And I'm further finding that whether or not the exclusionary rule applies, law enforcement cannot seize property if their actions leading up to the seizure are illegal.

After a further exchange with the parties, the trial judge announced, "[a]nd the [c]ourt is denying the State's request to seize the property," which we understand as referring to the State's request to have the property forfeited.

Following the hearing, the trial court issued two separate written orders. The first granted the motion to suppress without explanation. The second, entitled "Order Denying The State's Petition for Seizure and Forfeiture," denied the State's petition for forfeiture "for all the reasons stated within the hearing, and additionally considered by the Court whether stated or not" and ordered the State to return title and possession of the vehicle to Herrera. At the State's request, the trial court entered the following[1] findings and conclusions:

(1) The Court treated the hearing as an oral motion for summary judgment, as there was no objection by the State in the Court doing so and the Court granted the Motion for Summary Judgment based upon a finding that the stop, contact and search were illegal. The Court granted the Motion to Suppress based upon the illegality of the stop, contact and search. The Court further found that the exclusionary rule does apply to the suppression hearings in forfeiture proceedings. However, the Court further found that even if the exclusionary rule is found not to apply, law enforcement cannot seize property if their actions leading up the seizure are illegal.

---

[1] We have separated each conclusion into its own numbered paragraph for easier reading.

(2) The Court finds that no recognized exception to the warrant requirement existed under the facts as presented in this case. The Court further finds that probable cause to enter or search the specific location, i.e. the vehicle at issue in this proceeding, did not exist at the time the search was made. Further, the Court finds that even if probable cause existed, nothing about the circumstances as presented, made procuring a warrant impracticable.

(3) The Court finds that Agent West did not believe probable cause existed to obtain a warrant, nor did Agent Ramon. The Court further finds that Agent West did not believe he could obtain a warrant based upon the unreliability of the confidential source, and lack of credibility.

(4) The Court finds that the evidence presented did not provide any facts which would raise any suspicion that criminal activity was occurring or was likely to occur in this situation. The vehicle arrived and the driver parked legally. Agent Ramon indicated that he was unable to do anything else but request a consensual contact with the driver. Agent Ramon and Agent West never indicated an intention to arrest the driver at that point.

(5) Agent Ramon testified he saw furtive movement in the vehicle by the driver, but the Court finds that it could just have easily been innocent activity. Nothing in the record indicates the driver even saw the police as they approached his vehicle.

(6) The Court finds based upon Agent Cohea's testimony that the officers were there to take down the driver, search for drugs, and search for any weapons, regardless of any facts or circumstances. Agent Cohea, who searched the vehicle, indicated he did not see any furtive movement on the part of the driver, nor did he know of the alleged furtive movement Agent Ramon witnessed. There was no indication of danger at the time of the search. Further, the Court finds that the weapon found was not in plain view. Agent Cohea indicated he had to lift up a panel in order to find the weapon. The Court further finds that the search conducted by Agent Cohea was excessive in scope as Herrera had been removed from the vehicle for several minutes before Agent Cohea even arrived at the vehicle according to his testimony.

(7) The Court finds that the four officers attempted to create their own exigent circumstances by rushing the vehicle and pulling the driver out of the car based upon an alleged furtive movement. The Court further finds that the officers were not in possession of reasonably trustworthy facts and circumstances within their knowledge at the time of the search which would lead an officer of reasonable prudence to believe that the instrumentality of a crime or evidence of a crime would be found. The

6

Court finds that nothing in the initial stages of their encounter with Mr. Herrera indicated any danger, or any situation that would warrant the search of both Mr. Herrera and the vehicle.

(8) The Court finds that it was not proper to conduct a protective search for weapons contemporaneously with the temporary detention of Mr. Herrera under the facts of this circumstance because the conduct observed by the officers would not lead a reasonable officer to conclude that a crime is taking place and that the person with whom he is detaining may be armed and dangerous.

(9) The Court further finds that based upon the evidence presented, the State did not prove there was a substantial connection between the Lincoln Navigator at issue in this proceeding and criminal activity.

(10) The Court finds that seizure is not proper in this case because the seizure was not incident to a lawful arrest, lawful search, or lawful search incident to arrest.

By three issues, the State asserts that: (1) the trial court erred by excluding all the evidence gained from the search of the vehicle because the exclusionary rule is inapplicable to civil forfeiture proceedings, and because the forfeiture statute itself does not prohibit the State from seeking forfeiture of illegally seized property; (2) even if the trial court was correct in its ruling on the first issue, the search was legal; (3) even if the court correctly excluded the evidence, the court erred in granting Herrera's motion for summary judgment because there were still disputed issues of material fact remaining regarding whether the property was forfeitable, which the State asserts is a separate question from whether evidence may be excluded in a civil forfeiture proceeding.

## II. ISSUE ONE—SUPPRESSION OF EVIDENCE[2]

---

[2] The parties briefed this case as an appeal of a motion for summary judgment but it appears that the proceedings in the trial court had none of the characteristics of a summary-judgment proceeding. *See Tanksley v. CitiCapital Commercial Corp.*, 145 S.W.3d 760, 763 (Tex. App.—Dallas 2004, pet. denied) (observing that "[t]he right to summary judgment exists only in compliance with Texas Rule of Civil Procedure 166a"); s*ee generally* 68 TEX. JUR. 3D *Summary Judgment* §§ 1–32 (2014). We will nevertheless address the State's issues because the trial court rendered a final judgment. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001) (holding that appellate courts generally have jurisdiction only over final judgments and that a judgment is final if it "finally disposes of all remaining parties and claims"

7

By its first issue, the State argues: (1) chapter 59 of the Texas Code of Criminal Procedure does not bar the use of evidence seized through an illegal search so long as probable cause existed at the time of the seizure, and (2) the constitutional exclusionary rule[3] should not apply to civil forfeiture proceedings because civil forfeiture is a "non-punitive civil remedy."

By the first part of its argument, the State asks us to revisit and overrule our holding in a previous case that the civil forfeiture statute does not permit the State to seek to forfeit property that was not seized in a manner authorized by article 59.03(b). *See State v. Thirty Thousand Six Hundred Sixty Dollars and no/100*, 136 S.W.3d 392, 397 (Tex. App.—Corpus Christi 2004, pet. denied) (en banc). The State reasons that, even though article 59.03 "places certain restrictions on the seizure of forfeitable property, nothing in that article or chapter 59 suggests that an unlawful search precludes the State from proceeding under other articles which allow for the forfeiture of the property in question" so long as police had probable cause at the time of the seizure to believe the property was contraband.[4] We reject the State's argument because, as we held in *Thirty Thousand Six Hundred Sixty Dollars*, article 59.03(b) sets out the four circumstances in which the

regardless of the language it uses). We will construe the motion Herrera made at the close of the State's case as a motion for judgment, the bench trial version of a motion for directed verdict, because that is what it mostly closely resembles. *See Fondren Const. Co., Inc. v. Briarcliff Hous. Dev. Association, Inc.*, 196 S.W.3d 210, 216 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (construing a motion entitled a "motion for directed verdict" as a motion for judgment).

[3] "Evidence obtained as the result of an unreasonable search and seizure is subject to exclusion in a criminal proceeding." *State v. $217,590 in U.S. Currency*, 18 S.W.3d 631, 632 n.1 (Tex. 2000) (citing *Mapp v. Ohio,* 367 U.S. 643, 655 (1961)). In *$217,590*, the Texas Supreme Court expressly left open the question of whether the constitutional rule applies in civil forfeiture proceedings in Texas. *Id.* The Texas Supreme Court has not yet ruled on the issue.

[4] The Texas Supreme Court added the requirement that the State must "show probable cause existed for seizure of the property" that the State seeks to forfeit. *State v. Ninety Thousand Two Hundred Thirty-Five Dollars & No Cents in U.S. Currency ($90,235)*, 390 S.W.3d 289, 293 (Tex. 2013) (citing *$56,700 in U.S. Currency v. State*, 730 S.W.2d 659, 661 (Tex. 1987)).

State may legally seize property that is subject to forfeiture without a warrant,[5] and the civil forfeiture statute "does not authorize illegal police conduct. Regardless of whether the exclusionary rule applies, law enforcement agents cannot seize property if their actions leading up to the seizure are illegal." *See id.* at 397; *see also $763.30 U.S. Currency v. State*, No. 09-05-00437 CV, 2007 WL 474967, at *1 (Tex. App.—Beaumont Feb. 15, 2007, no pet.) (mem. op.) (holding, in a forfeiture case, that even though the property owner consented to the search of his vehicle, the court of appeals "must still determine whether the initial traffic stop was lawful"); *$822.41 In U.S. Currency & 2003 Dodge Ram 1500 Truck v. State*, No. 13-05-00259-CV, 2007 WL 2266209, at *2 (Tex. App.—Corpus Christi Aug. 9, 2007, no pet.) (mem. op.) (holding, in a forfeiture case, that "the State is required to prove the search was lawful"). We accordingly reaffirm our holding in *Thirty Thousand Six Hundred Sixty Dollars*. *See* 136 S.W.3d at 397. We will not address the trial court's conclusion that the constitutional exclusionary rule applies to civil forfeiture proceedings because it is unnecessary to resolve this case. *See In re B.L.D.*, 113 S.W.3d 340, 349 (Tex. 2003) (reaffirming the rule that courts should decide cases on non-constitutional grounds whenever possible); *see also VanDevender v. Woods*, 222 S.W.3d 430, 433 (Tex. 2007) (observing that "the cardinal principle of judicial

---

[5] Article 59.03(b) allows the State to seize property that is subject to forfeiture without a warrant if:

(1) the owner, operator, or agent in charge of the property knowingly consents;

(2) the seizure is incident to a search to which the owner, operator, or agent in charge of the property knowingly consents;

(3) the property subject to seizure has been the subject of a prior judgment in favor of the state in a forfeiture proceeding under this chapter; or

(4) the seizure was incident to a lawful arrest, lawful search, or lawful search incident to arrest.

TEX. CODE CRIM. PROC. ANN. art. 59.03(b) (West, Westlaw through 2013 3d C.S.).

restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further."); TEX. R. APP. P. 47.1. We overrule the State's first issue.

### III. ISSUE TWO—LEGALITY OF THE SEARCH

The State asserts by its second issue that the trial court reversibly erred in granting the motion to suppress because the detention of Herrera was legal and the trial court suppressed all the evidence the State had to prove its case.[6] *See* TEX. R. APP. P. 44.1(a).

### A. Standard of Review and Applicable Law

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Nalle Plastics Family Ltd. P'ship v. Porter, Rogers, Dahlman & Gordon, P.C.*, 406 S.W.3d 186, 208 (Tex. App.—Corpus Christi 2013, pet. denied). The decision to admit or exclude evidence constitutes reversible error only if the complaining party can show that the error "probably caused the rendition of an improper judgment." *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 812 (Tex. 2010) (citing *State v. Cent. Expressway Sign Assocs.*, 302 S.W.3d 866, 870 (Tex. 2009)); *see* TEX. R. APP. P. 44.1(a). However, the complaining party is not required to show that a different judgment would have resulted "but for" the excluded evidence. *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex. 1992). The Texas Supreme Court has not prescribed a specific test for determining when an evidentiary error caused the rendition of an improper judgment, and instead "entrust[ed] that determination to the sound discretion of the reviewing court." *Cent. Expressway*, 302 S.W.3d at 870. When making this determination, we review the entire record. *Id.*

---

[6] The State specifically asserts that "the trial court erred in suppressing evidence of Herrera's detention, and the search of his vehicle, because the police had reasonable suspicion to detain Herrera, and reasonable justification for the protective sweep, as well as probable cause for the search of his vehicle."

### B. Legality of the Search

#### 1. Standard of Review

In a civil forfeiture proceeding, we do not engage in our own factual review but decide only whether the record supports the trial court's resolution of factual matters. *See State v. $217,590 in U.S. Currency*, 18 S.W.3d 631, 633–34 (Tex. 2000); *State v. Five Thousand Five Hundred Dollars in U.S. Currency*, 296 S.W.3d 696, 702 (Tex. App.—El Paso 2009, no pet.). If the trial court issued findings of fact, we must determine first whether the evidence, viewed in the light most favorable to the trial court's ruling, supports these findings. *Five Thousand Five Hundred Dollars,* 296 S.W.3d at 702 (citing *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006)). We afford "almost total deference" to the trial court's determinations of historical fact as well as its ruling on mixed questions of law and fact that turn on credibility and demeanor, but we review de novo mixed questions that do not turn on those factors. *See $217,590 in U.S. Currency*, 18 S.W.3d at 634 n.3 (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc)). Whether the trial court properly applied the law to the facts is a question of law that we review de novo. *See id.* at 632.

#### 2. Applicable Law

The Fourth Amendment requires that a peace officer must have reasonable suspicion to detain a citizen, even if the detention is short of a "full-blown custodial arrest." *Derichsweiler v. State*, 348 S.W.3d 906, 914 (Tex. Crim. App. 2011). A police officer has reasonable suspicion when he possess "specific, articulable facts that, combined with rational inferences from those facts, would lead him reasonably to conclude that the person detained is, has been, or soon will be engaged in criminal activity." *Id.*; *accord*

11

*Crain v. State*, 315 S.W.3d 43, 52 (Tex. Crim. App. 2010). These facts must add up to more than a mere inarticulate hunch, suspicion, or good faith belief that a crime was in progress. *Crain*, 315 S.W.3d at 52. This is an objective standard that looks to the totality of the circumstances and disregards the subjective intent of the detaining officers.[7] *Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013).

As the Texas Court of Criminal Appeals recently reaffirmed, "[a]n anonymous tip is seldom sufficient to establish reasonable suspicion" for an investigative detention. *Matthews v. State*, 431 S.W.3d 596, 603 (Tex. Crim. App. 2014).[8] To support reasonable suspicion, the tip must show some indications that the tipster is credible or that his information is reliable. *Id.*; *see Martinez v. State*, 348 S.W.3d 919, 923 (Tex. Crim. App. 2011) (anonymous tip seldom provides reasonable suspicion because it lacks "sufficient indicia of reliability, such as a suitable level of police corroboration"). That indicia of reliability can come from the officer's knowledge and experience plus corroboration of the details of the tip. *State v. Wilson*, 337 S.W.3d 289, 295 (Tex. App.—Texarkana 2011, no pet.); *Dowler v. State*, 44 S.W.3d 666, 670 (Tex. App.—Austin 2001, pet. ref'd).

---

[7] We note that in the course of evaluating the legality of the detention, the trial court made several conclusions of law that extensively incorporate the subjective intent of the officers in detaining Herrera. We will not address these conclusions because, as we explained, when evaluating whether a detention was justified we apply an objective standard that disregards the subjective intent of the arresting officer. *See Wade v. State*, 422 S.W.3d 661, 668 (Tex. Crim. App. 2013); *Hereford v. State*, 339 S.W.3d 111, 123 (Tex. Crim. App. 2011) (reaffirming the principle that "[t]he officer's actual intentions will neither validate nor invalidate the reasonableness of the officer's actions").

[8] The United States Supreme Court recently approved a detention on the basis of an anonymous 911 call that another driver had just run the caller off the road. *See Navarette v. California*, 134 S.Ct. 1683, 1689 (2014). We find that case distinguishable because the "tip" in that case presented several indicia of reliability that are not present in this case: (1) the caller gave a detailed description of wrongdoing that she allegedly witnessed; (2) the circumstances supported the inference that the tipster made the call soon after the event, which is the kind of contemporaneous report evidence law tends to treat as reliable; and (3) the caller used the 911 system to make the report, which "has some features that allow for identifying and tracing callers, and thus provide[s] some safeguards against making false reports with immunity." *Id.* at 1689–90.

12

Corroboration refers to whether, in light of the circumstances, the investigating officer confirms enough facts to reasonably conclude that the information in the tip is reliable and justifies a temporary detention. *Taflinger v. State*, 414 S.W.3d 881, 885 (Tex. App.—Houston [1st Dist.] 2013, no pet.). Investigating officers must corroborate sufficient facts to show that the tip is "reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *Florida v. J.L.*, 529 U.S. 266, 272 (2000). This means that, in general, "corroboration of details that are easily obtainable at the time the information is provided, and which do not indicate criminal activity, will not lend support to the tip." *Gilmore v. State*, 323 S.W.3d 250, 258 (Tex. App.—Texarkana 2010, pet. ref'd) (internal quotation marks omitted); *accord Wilson*, 337 S.W.3d at 295; *Hall v. State*, 74 S.W.3d 521, 525 (Tex. App.—Amarillo 2002, no pet.); *Smith v. State*, 58 S.W.3d 784, 792 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

There is an inverse relationship between the reliability of the informant and the amount of additional corroboration needed to provide reasonable suspicion to justify a detention: "the less reliable the tip, the more information is needed." *Martinez*, 348 S.W.3d at 923 (citing *Alabama v. White*, 496 U.S. 325, 330 (1990)); *Taflinger*, 414 S.W.3d at 885. The most reliable form of a tip comes from a citizen who has no other contact with the police beyond witnessing a criminal act and who is willing to be held accountable for the information given to the police. *Taflinger*, 414 S.W.3d at 885; *State v. Griffey*, 241 S.W.3d 700, 704 (Tex. App.—Austin 2007, pet. ref'd). A completely anonymous tip, on the other hand, is the least reliable and requires corroboration by additional facts. *Griffey*, 241 S.W.3d at 704. A tip from an informant who has had contact with the police other than willingly reporting a crime, and whose reliability is unknown, is not considered as

13

reliable as a tip from a citizen informant. *See State v. Duarte*, 389 S.W.3d 349, 355–56 (Tex. Crim. App. 2012); *State v. Huddleston*, 387 S.W.3d 33, 39 (Tex. App.—Texarkana 2012, pet. ref'd).

### 3. Analysis

The State asserts that the officers sufficiently corroborated the source's information because Herrera arrived when and where the source specified while driving a vehicle that the source accurately described. The officers testified that Rack Daddy's was a known site for drug sales and that the informant positively identified Herrera as the person from whom he had arranged to buy drugs from at that time and location. According to the State, this evidence was sufficient corroboration to create reasonable suspicion that justified detaining Herrera. The trial court found, and Herrera argues, that the police officers only corroborated "public facts" such as Herrera's personal appearance, and the color, type, and appearance of his car, and that none of the police officers present were aware of any facts that were not available to the general public that would justify a stop.

Applying this law to the facts of the case, we conclude that police did not possess reasonable suspicion to detain Herrera based on their corroboration of the anonymous tip. The tip in this case was not strictly anonymous because the source was in the investigating officer's custody at the time, but the source was never identified in any of the proceedings in the trial court. *See Navarette v. California,* 134 S.Ct. 1683, 1688 (2014) (evaluating the case as an anonymous tip even though the prosecution had evidence, that it did not introduce in the trial court, of the identity of the 911 caller). A tip from an anonymous source requires corroboration by additional facts, *see Griffey*, 241

14

S.W.3d at 704, especially in light of the fact that the tipster had charges pending against him at the time he gave information to the police. *See Huddleston*, 387 S.W.3d at 39. Each investigating officer admitted that in the short time police surveyed Herrera before detaining him, they did not witness Herrera commit any crime or do anything indicative of criminal activity except for the "furtive movements" testified to by Lieutenant Ramon, which we may not consider in this analysis.[9] The officers corroborated facts that served to identify Herrera, such as his ethnicity and the make and model of his car, but no facts that indicated criminal activity. We acknowledge that the police officers knew that the area was known for drug sales and that the informant gave accurate information regarding Herrera's itinerary, but these facts are insufficient to corroborate the tip where the officers admitted they were not aware of independent facts indicating that Herrera's presence at the scene was connected with any of that activity.[10] *See Johnson v. State*, 146 S.W.3d 719, 722 (Tex. App.—Texarkana 2004, no pet.) (holding that the officer knew "there had been drug activity in the area, but not known to have been committed by the defendant" was not sufficient to corroborate an anonymous tip).

In sum, viewing the totality of the circumstances objectively available to the investigating officers at the time they detained Herrera, we conclude that the detention

---

[9] The trial court specifically found that the "furtive movements" testified to by Lieutenant Ramon "could just have easily been innocent activity. Nothing in the record indicates the driver even saw the police as they approached the vehicle." We interpret this as a finding based on the credibility of the witness that we must accept because it is supported by the record. *See Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997) (en banc).

[10] We note that the State asserts in its brief that Officer West witnessed the source set up the transaction at Rack Daddy's, but we interpret Officer West's testimony to be that the source gave the officers information about Herrera when the source was in the presence of the police officers. Even if Officer West did observe the source actually set up the transaction, his testimony is vague enough that we are not certain what he witnessed. Officer West testified that he does not remember if the transaction occurred via phone or text message, and he did not testify regarding the number of the person the source was communicating with or, if the transaction was set up by phone, the sound of the other party's voice.

15

was unjustified because the officers failed to establish that the tip was "reliable in its assertion of illegality, not just in its tendency to identify a determinate person." *J.L.*, 529 U.S. at 272; *see Wilson*, 337 S.W.3d at 295 (police did not sufficiently corroborate a tip from appellant's girlfriend that he would be carrying heroin in his car when they confirmed the make, model, number and the tipster's description of passengers in the car); *Smith*, 58 S.W.3d at 792–93 (holding that detention was illegal when police had only information from a known informant that appellant would be driving northbound on Highway 6 in a particularly-described car with two passengers, and that the appellant would be in possession of heroin, where the police did not observe any suspicious activity when watching a vehicle that matched the tipster's description); *Davis v. State*, 989 S.W.2d 859, 865 (Tex. App.—Austin 1999, pet. ref'd) (police did not sufficiently corroborate tip which alleged that three white males were driving on I-35 while smoking marijuana in a black Blazer with a particular license plate number when the police only confirmed the make, color and license plate of the car and the description of the occupants). We accordingly overrule the State's second issue.

## IV. ISSUE THREE

By its third issue, the State argues that "to the extent that the trial court treated the present disposition as a proceeding on an oral motion for summary judgment it was Herrera's burden to affirmatively prove that the State was not entitled to forfeiture" and that the fact that Herrera prevailed on the motion to suppress "merely precludes the State from using certain evidence, but does not affirmatively disprove any element of the forfeiture claim."

We construe Herrera's oral motion asking the trial court to rule on the motion to

16

suppress and to deny the forfeiture petition as a motion for judgment.[11]  *See Fondren*

*Const. Co., Inc. v. Briarcliff Hous. Dev. Assocs., Inc.*, 196 S.W.3d 210, 216 (Tex. App.—

Houston [1st Dist.] 2006, no pet.); *Matheus v. Sasser*, 164 S.W.3d 453, 457 (Tex. App.—

Fort Worth 2005, no pet.).  In contrast to a motion for instructed verdict in a jury trial, in a

bench trial the trial court has the authority to rule on both factual and legal issues after

the close of the plaintiff's case in chief.  *Bledsoe Dodge, L.L.C. v. Kuberski*, 279 S.W.3d

839, 841 (Tex. App.—Dallas 2009, no pet.) (citing *Qantel Bus. Sys., Inc. v. Custom

Controls Co.*, 761 S.W.2d 302, 304 (Tex. 1988)).  "In doing so, the trial court is presumed

to have ruled on both the sufficiency of the evidence and on the weight of the evidence

and credibility of the witnesses."  *Id.* at 841; *see Huang v. Don McGill Toyota, Inc.*, 209

S.W.3d 674, 677 (Tex. App.—Houston [14th Dist.] 2006, no pet.) (op. on reh'g).  On

appeal, the plaintiff, the State in this case, can challenge the judgment as in any nonjury

case. *See Fondren*, 196 S.W.3d at 216.  When a party attacks the legal sufficiency of an

adverse finding on which the party had the burden of proof, the party must demonstrate

on appeal that the evidence establishes as a matter of law all of the vital facts in support

of the proposed disposition.  *Huang*, 209 S.W.3d at 677 (citing *Dow Chem. Co. v. Francis*,

46 S.W.3d 237, 241 (Tex. 2001)).

The State's argument that the ruling on the motion to suppress did not disprove

any element of the forfeiture claim is based on precedent from the Texas Court of Criminal

Appeals that a criminal defendant does not have the right to use a motion to suppress as

a sort of "mini-trial" to addresses the sufficiency of the evidence of an element of a

---

[11] As we explained above, both parties briefed this case as a summary-judgment appeal, but the proceedings in the trial court did not have any of the characteristics of a summary-judgment proceeding. *See Tanksley*, 145 S.W.3d at 763 (observing that there is no right to summary judgment except through compliance with Rule 166a).

charged offense. *See Woods v. State*, 153 S.W.3d 413, 415 (Tex. Crim. App. 2005). However, *Woods* is a criminal case where the State proceeds against a person and the subject of a motion to suppress is evidence that might be used to prove the elements of the criminal charge against that person. In a civil forfeiture proceeding, by contrast, "[i]t is the property which is proceeded against, and, by resort to a legal fiction, held guilty and condemned as though it were conscious instead of inanimate and insentient." *Fant v. State*, 931 S.W.2d 299, 304 (Tex. Crim. App. 1996) (citing *U.S. v. Ursery*, 518 U.S. 267, 275 (1996)). We agree with the State's argument under its first issue that the "evidence concerning the contraband found in the vehicle was crucial to showing a substantial connection between the vehicle and criminal activity sufficient to justify forfeiture." Once the trial court granted the motion to suppress, the State could not present any evidence regarding the sole matter that was at issue in the proceeding: whether the property was subject to forfeiture. *See id.* In other words, there was no longer any evidence with which the State could have tried to establish as a matter of law all vital facts in support of its forfeiture petition. *See Huang*, 209 S.W.3d at 677. There was simply nothing left for the trial court to do save render judgment for Herrera. We accordingly overrule the State's third issue.

## V. CONCLUSION

We affirm the judgment of the trial court.


NORA L. LONGORIA
Justice

Delivered and filed the
28th day of August, 2014.

18