**Hong HUANG, Latonia Calamease, Isaak Golbraykh, Zhi Yuan Liu, Juan Ramon Mejia, Lie Kai Pon, Yan Fen Xian, Guoyue Yu, Jing Yan Zhou, Chi–Chih Tsai, Jian–Feng Li, and Chiu K. Lee, Appellants,**

**v.**

**DON McGILL TOYOTA, INC., Appellee.**

**No. 14–03–01287–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

Oct. 19, 2006.

Rehearing Overruled Dec. 21, 2006.

Michael C. O'Connor, Houston, for appellants.

Bob Mabry, Daniel C. Pappas, Houston, for appellee.

Panel consists of Justices EDELMAN, SEYMORE, and GUZMAN.

## MAJORITY OPINION ON REHEARING

CHARLES W. SEYMORE, Justice.

Appellants' motion for rehearing is overruled. We withdraw the opinion of October 13, 2005 and issue this substitute majority opinion on rehearing.

Hong Huang, Latonia Calamease[1], Isaak Golbraykh, Zhi Yuan Liu, Juan Ramon Mejia, Lie Kai Pon, Yan Fen Xian, Guoyue Yu, Jing Yan Zhou, Chi–Chih Tsa, Jian–Feng Li, and Chiu K. Lee appeal a take nothing judgment in favor of Don McGill Toyota. In four issues, appellants contend (1) they presented sufficient evidence of fraud, deceptive trade practices, and damages, and (2) the evidence is legally and factually insufficient to show Golbraykh and Mejia's claims are barred by accord and satisfaction. We affirm.

### I. Factual and Procedural Background

Lured by an advertisement for zero percent interest, each of the appellants, ex-

1. Latonia Calamease filed a separate notice of appeal, but her name does not appear on appellant's brief. Because no brief was filed on her behalf, her appeal is dismissed for want of prosecution. *See* Tex.R.App. P. 42.3(b).

cept Latonia Calamease, went to Don McGill Toyota seeking to purchase a vehicle. Each appellant negotiated with a salesperson through a translator, if necessary, and signed lease documents for a Toyota vehicle. Appellants testified at trial that they intended to purchase a vehicle and were led to believe they were purchasing a vehicle. When appellants discovered the agreements they signed were lease agreements as opposed to purchase agreements, they went back to Don McGill Toyota and complained. Some appellants testified they were told they had purchased the vehicle, but the lease agreement was necessary to obtain zero percent interest. One appellant, Isaak Golbraykh, returned to Don McGill Toyota, rescinded his lease agreement, and entered into a purchase agreement. Another appellant, Juan Ramon Mejia, returned the used vehicle he originally leased and entered into another lease agreement for a new vehicle. All appellants testified that they were still in possession of the vehicles leased or purchased from Don McGill Toyota.

Appellants filed suit against Don McGill Toyota alleging, among other things, fraud in the inducement, and violations of the Texas Deceptive Trade Practices Act (DTPA). *See* Tex. Bus. & Com.Code Ann. § 17.01 et. seq. Appellants sought damages for out-of-pocket expenses, including, but not limited to, cash payment, cost of insurance, attorney's fees, and loss of benefit of the bargain. Trial was to the court. At the conclusion of appellants' evidence, appellee moved for what was improperly denominated as an "instructed" verdict. The trial judge granted the motion and entered a take-nothing judgment.

## II. Liability and Damages

In their first issue, appellants contend the trial court erred in entering judgment for appellee because there was sufficient evidence to support a finding of fraud and/or violations of the DTPA. In their second issue, appellants contend they presented sufficient evidence of damages.

### A. Standard of Review

Ordinarily, in reviewing the grant of a motion for judgment, we must decide whether there is any evidence of probative value sufficient to raise an issue of fact on the material questions presented. In this case, however, by entering judgment at the close of appellants' case-in-chief, the trial court, acting as fact finder, is presumed to have ruled not only on the sufficiency but also on the weight of the evidence and credibility of the witnesses. *Qantel Bus. Sys., Inc. v. Custom Controls Co.,* 761 S.W.2d 302, 303–05 (Tex. 1988); *Martin-Simon v. Womack,* 68 S.W.3d 793, 796 (Tex.App.-Houston [14th Dist.] 2001, pet. denied). Thus, after granting a motion for judgment, the trial judge may properly make findings of fact as well as conclusions of law. *See Qantel,* 761 S.W.2d at 304. Findings of fact in a bench trial have the same force and dignity as a jury verdict; we review them for legal and factual sufficiency under the same standards we apply in reviewing a jury's findings. *See Catalina v. Blasdel,* 881 S.W.2d 295, 297 (Tex.1994). On appeal from the trial court's judgment in a non-jury trial, the legal and factual sufficiency of the evidence to support the judgment may be challenged as in any other case. *Roberts Express, Inc. v. Expert Transp., Inc.,* 842 S.W.2d 766, 769–70 (Tex.App.-Dallas 1992, no writ).

When a party attacks the legal sufficiency of an adverse finding on which he had the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of his proposed disposition. *Dow Chem. Co. v. Francis,* 46 S.W.3d 237, 241 (Tex.2001). We review the evidence in the light most

favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson,* 168 S.W.3d 802, 822 (Tex.2005). When a party attacks the trial court's adverse finding for factual insufficiency, he must demonstrate on appeal that the finding is against the great weight and preponderance of the evidence. *Dow Chem. Co.,* 46 S.W.3d at 241. We must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986), *overruled on other grounds, Crown Life Ins. Co. v. Casteel,* 22 S.W.3d 378, 388 (Tex.2000).

### B. Findings of Fact

The trial court rendered 208 findings of fact. The following findings significantly impact our disposition of legal and factual sufficiency issues:

5. The lease agreements of the Plaintiffs fully detailed the payments, charges, costs and expenses for each of the respective vehicles acquired by the Plaintiffs.

6. The Plaintiffs have incurred no expenses or charges for claims asserted in this lawsuit besides those required in their respective leases.

7. Each of the Plaintiffs separately negotiated for their respective vehicles with the prices and payments that were embodied in their respective lease agreements.

8. The Plaintiffs that did not speak or read English brought translators of their own choosing to McGill to negotiate on behalf of such Plaintiffs.

10. After Isaak Golbraykh complained of his lease agreement, this Plaintiff negotiated a purchase agreement with McGill for his vehicle.

12. Juan Ramon Mejia renegotiated a second lease transaction after his initial lease transaction with McGill.

21. The terms that the Plaintiffs or their respective translators negotiated were incorporated into their respective lease agreements.

108. In order to accommodate and resolve the complaint that Golbraykh made about his lease, McGill and Golbraykh entered into a retail sale contract with McGill paying Golbraykh's lease obligations.

110. Golbraykh understood that by signing the retail sale contract labeled as Defendant's Exhibit No. 12, that Golbraykh was obligated to pay the total sales price and the payments set forth in that document.

### C. Conclusions of Law

The following conclusions of law are relevant to our disposition:

213. The Plaintiffs failed to rescind their transactions with McGill.

214. The Plaintiffs' claims for damages should be denied.

215. The Plaintiffs' claims for relief predicated upon Deceptive Trade Practices Consumer Protection Act violations should be denied.

216. The Plaintiffs' fraud claims should be denied.

217. The claims and causes of action asserted by the Plaintiffs against McGill should be dismissed and denied in their entirety.

218. All relief sought by the Plaintiffs should be denied.

### D. Analysis

Without citation to authority, appellants contend their burden is to show there is some evidence in the record to support reversal of the trial court's judg-

ment. However, we are required to review the trial court's judgment and this record consistent with the standards articulated in *Catalina,* 881 S.W.2d at 297 and *Qantel,* 761 S.W.2d at 303–05. Moreover, we must consider and give proper weight to the trial court's findings of fact. We acknowledge that findings of fact in a case tried to the court have the same force and dignity as a jury's verdict; however, when a complete reporter's record is filed, findings of fact are not conclusive. *Middleton v. Kawasaki Steel Corp.,* 687 S.W.2d 42, 44 (Tex.App.-Houston [14th Dist.] 1985, writ ref'd n.r.e.).

Appellants suggest we should disregard the liability issues because of the trial court's oral pronouncement that his instructed verdict was based on insufficient evidence to calculate damages. On the contrary, we cannot consider comments made by the judge at the conclusion of a bench trial as a substitute for findings of fact and conclusions of law. *See In re W.E.R.,* 669 S.W.2d 716, 716 (Tex.1984); *Rutledge v. Staner,* 9 S.W.3d 469, 470 (Tex. App.-Tyler 1999, pet. denied). We acknowledge the testimony of each appellant supporting their allegations that appellee's representatives misrepresented contents of the lease documents. We also consider their assertions that they were rushed through the lease signing process. We note that the subject leases are on forms printed for or on behalf of Toyota Motor Credit Corporation and Bank One Auto Leasing Corporation. The word "lease" is found in almost every paragraph or under every caption. The following notice to the lessee or co-lessee appears just above appellants' signature line in the Toyota Motor Credit Corporation form: "*This is a lease; you have no ownership interest in the vehicle unless and until you exercise your option to purchase set forth in this lease.*" Similarly, the following language appears just above the signature line in the Bank One lease: "*THIS IS A LEASE AGREEMENT. THIS IS NOT A PURCHASE AGREEMENT. PLEASE REVIEW THESE MATTERS CAREFULLY AND SEEK INDEPENDENT PROFESSIONAL ADVICE IF YOU HAVE ANY QUESTIONS CONCERNING THIS TRANSACTION....*" During cross-examination, several appellants were impeached relative to the contention that they could not speak or understand English. Moreover, before appellants rested their case, the trial judge heard evidence about appellants' law firm paying $7,000 to appellee's former salesman, Joe Martinez. This record indicates the trial judge had reasonable basis to doubt appellants' credibility. Findings of Fact numbered 5, 6, 7, 8 and 21 are indicative of the trial court's belief that appellants or their interpreters understood and assented to the terms and conditions in their respective lease documents. These findings support the trial court's conclusions of law numbered 215, 216, 217 and 218. Again, we must consider all the evidence in a light favorable to challenged findings and indulge in every inference favorable to the court's judgment. Accordingly, we hold findings of fact numbered 5, 6, 7, 8 and 21 are sustainable and support conclusions of law numbered 215, 216, 217 and 218.

Appellants' first issue is overruled.

To recover either under the DTPA, or for fraud in the inducement, appellants must prove they sustained damages as a result of their reliance on misrepresentations by Don McGill's agents or representatives. *See* Tex. Bus. & Com.Code Ann. § 17.50(b)(1) (Vernon 2005); *Formosa Plastics Corp. USA v. Presidio Engrs. & Contractors, Inc.,* 960 S.W.2d 41, 47 (Tex.1998). While the DTPA does not define "actual damages," the term has been construed to mean common law damages.

*W.O. Bankston Nissan, Inc. v. Walters,* 754 S.W.2d 127, 128 (Tex.1988). The common law affords two measures of damages for fraudulent misrepresentation: (1) the out-of-pocket measure, which is the difference between the value of that which was parted with and the value of that which was received, and (2) the benefit-of-the-bargain measure, which is the difference between the value represented and the value actually received. *Formosa Plastics,* 960 S.W.2d at 49. A plaintiff may recover either the out-of-pocket or the benefit-of-the-bargain damages, whichever is greater. *Arthur Andersen & Co. v. Perry Equip. Corp.,* 945 S.W.2d 812, 817 (Tex.1997).

Appellants contend they elicited evidence sufficient to support the benefit-of-the-bargain measure of damages. Appellants suggest their damages should be calculated by subtracting what they assert to be the purchase price from the total costs which will be incurred if they exercise the option to purchase for the amounts expressed in their leases. In support of their proposed damage calculation, appellants refer this court to *George Pharis Chevrolet, Inc. v. Polk,* 661 S.W.2d 314, 315 (Tex.App.-Houston [1st Dist.] 1983, no writ); *Mack v. Bradford,* 359 S.W.2d 941, 943–44 (Tex.App.-El Paso 1962, writ dism'd); and *City Lincoln Mercury v. Ybarra,* 308 S.W.2d 67, 69 (Tex.App.-Dallas 1957, writ dism'd). However, none of these cases involve misrepresentations to plaintiffs that they were purchasing rather than leasing an automobile. The salesmen in each of these cases allegedly represented the purchase price of a vehicle to be a certain amount, then wrote a higher figure in the sales agreement. There was no claim that they were misrepresenting the type of transaction and circumstances under which the plaintiffs would possess the automobiles. The plaintiffs sought to recover the difference between what was orally represented to be the purchase price and the amount they were required to remit under the subsequent written purchase agreement. This calculation of damages is patently not the difference between the value represented and the value received. *See City Lincoln Mercury,* 308 S.W.2d at 69.

Here, appellants complain that they were fraudulently induced to sign leases. They contend the salesmen told them they were purchasing, not leasing, the vehicles. Unlike the plaintiffs in the above cited cases, appellants did not purchase the vehicles for a higher amount of money than previously represented. Appellants fail to recognize that they have no contractual obligation to purchase the vehicles. Consequently, appellants' damages are not determinable by subtracting the lease costs from the total cost to purchase the vehicles if they exercise their *options* under the agreements. Under these facts, the *value represented* is ownership of the automobile for a sum certain amortized (without interest) over the period of time expressed in the lease. Obviously, under the purchase paradigm, each appellant had the potential of equitable interest in the automobile after tendering the sum alleged to be the purchase price. Because appellants were not obligated to purchase the leased vehicles, the *value received* was use of the vehicles for the amounts expressed in the agreements over the same alleged amortization period, without residual equity. When a defendant misrepresents the type or quality of the product or service which is the subject of the transaction, an essential part of plaintiff's proof is the fair market value of what was represented versus the market value of what was actually received. *W.O. Bankston Nissan, Inc.,* 754 S.W.2d at 128. Appellants failed to present any evidence regarding the fair market value of the automobiles or fair

market value of the leases. Without evidence sufficient to establish the amount of equity appellants might have realized if they had purchased the vehicles for the represented amounts, the trial court could not calculate the difference between value represented and value received. In their motion for new trial, appellants acknowledged that they failed to present the above evidence. Accordingly, we overrule appellants second issue.

### III. Accord and Satisfaction

In their third and fourth issues, appellants contend the evidence was legally and factually insufficient to support the trial court's finding that Isaak Golbraykh's and Juan Mejia's claims were barred by accord and satisfaction. When Golbraykh first discovered he had mistakenly leased a vehicle from appellee, he returned to the dealership and executed a sales agreement for the same vehicle. Several weeks after Mejia leased a used vehicle from Don McGill Toyota, a salesperson from the dealership called him and told him he could lease a new vehicle for the same monthly payment as the used vehicle. Mejia returned the first vehicle to Don McGill Toyota and executed a second lease agreement. In its conclusions of law, the trial court found Golbraykh's and Mejia's claims were barred by accord and satisfaction.

The defense of accord and satisfaction rests on a contract in which the parties agree to the discharge of an existing obligation by means of a subsequent payment tendered and accepted. *Lopez v. Munoz, Hockema & Reed, L.L.P.*, 22 S.W.3d 857, 865 (Tex.2000). Appellee contended at trial that by executing a second agreement, Golbraykh and Mejia satisfied their dispute with the dealership. For the accord and satisfaction defense to prevail, there must be evidence that there was a dispute between the parties and they specifically and intentionally agreed to discharge the party's obligations. *Id.*

With regard to Golbraykh, we find appellee met that burden. When Golbraykh discovered he had signed a lease agreement, he was dissatisfied and returned to the dealership to execute a sales agreement. Therefore, Golbraykh's execution of the sales agreement constituted an accord, which was satisfied when appellee paid off the lease agreement prior to execution of the sales agreement. By rescinding the agreement, Golbraykh intentionally released Don McGill from its obligation to lease the vehicle to him. Don McGill, on the other hand, intentionally released Golbraykh from his obligation to make lease payments. Accordingly, we sustain the trial court's findings of fact numbered 108 and 110.

With regard to Mejia, appellee has not proved the defense of accord and satisfaction. When Mejia returned the first vehicle, he executed another lease agreement on a second vehicle. Mejia claimed at trial he was duped into executing a lease agreement in both transactions. Therefore, the second agreement did not constitute an accord and satisfaction. However, failure of Mejia's accord and satisfaction defense does not require reversal of the trial court's judgment. Because neither Golbraykh, nor Mejia, produced evidence sufficient to calculate damages, the trial court did not err in entering the take nothing judgment. Appellants' third and fourth issues are overruled.

The judgment of the trial court is affirmed.

EDELMAN, J., concurring.

RICHARD H. EDELMAN, Justice, concurring on rehearing.

I agree that the damage evidence presented in this case is legally insufficient,

but I disagree with the majority opinion's discussion regarding the applicable damage calculation. Because the appellants sought only to purchase (not lease) the vehicles, and because a lease is fundamentally different from, and therefore not comparable to, a purchase, there is no way to calculate damages as between a purchase and lease as such. Nor would it be meaningful to calculate the difference between the value received versus the value parted with under a lease and purchase, respectively, because that still does not give a basis to compare one with the other. Instead, evidence of damage would have to allow a comparison of the total cost to purchase the respective vehicles by way of the lease each appellant entered into (exercising the purchase option) versus the purchase transaction they were represented to be entering into. This would involve an adjustment by an appropriate discount factor to compensate for the differing times and amounts at which payments would be made under each alternative. Without such an "apples to apples" comparison, it is not possible to tell whether the appellants were better or worse off with the lease transaction they actually entered into than they would have been with the purchase transaction they were allegedly represented to be entering into, and thus whether they suffered any actual damage. Moreover, because the damage evidence was legally insufficient, it is unnecessary to address any other conclusion of law or finding of fact.