**Opinion issued August 22, 2024**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-23-00640-CV

_____

## IN THE INTEREST OF J.G.W. AND C.J.W., CHILDREN

---

**On Appeal from the 461st District Court**
**Brazoria County, Texas**
**Trial Court Case No. 95817-F**

---

## MEMORANDUM OPINION

This appeal arises from a suit affecting the parent-child relationship. Jeremy Warren challenges the trial court's final order, entered after a bench trial, denying his petition to modify the parent-child relationship and, in particular, his child support obligation.

In six issues, Jeremy argues that the trial court erred in granting Stephanie Warren's no evidence motion for summary judgment and her motion for directed verdict, denying him a fair trial, and denying his motion to recuse.

We affirm.

## Background

In 2018, the trial court signed an agreed final decree of divorce (the "2018 Order") appointing Jeremy Eugene Warren and Stephanie Theresa Warren as joint managing conservators of their minor children, J.G.W. and C.J.W. The trial court also ordered Jeremy to pay child support in the amount of $1,600 per month until June 2022—when J.G.W. turned 18. Thereafter, the child support payment would be reduced to $1,200 per month.

Jeremy subsequently petitioned for modification of the 2018 Order. In January 2022, Jeremy and Stephanie agreed to reduce Jeremy's monthly child support obligation to $1,200—four months earlier than it would have been reduced under the 2018 Order.

In accordance with the parties' agreement, the trial court signed an agreed order (the "2022 Agreed Order") finding that circumstances had materially and substantially changed since rendition of the 2018 Order, granting Jeremy's petition to modify, and modifying Jeremy's child support obligation to $1,200 per month beginning February 1, 2022.

2

The 2022 Agreed Order provides that Jeremy's child support obligation "shall continue until the first month following the date of one of the following events as to each child," and listing such events such as the child reaches the age of 18 or graduates high school (whichever occurs later), marries, dies, or enlists in the armed forces.

Approximately six months later, Jeremy filed the instant suit seeking to again modify his child support obligation. Jeremy asserted that his child support obligation should cease "because custody is split 50/50" or, alternatively, that the child support obligation be reduced to "the difference between [his] legal obligation and the mother's legal obligation." Jeremy further asserted that the Office of Attorney General "consider both parents as joint managing conservators instead of the mother being listed as 'custodial.'"

Stephanie moved for a no-evidence summary judgment. She argued that there is no evidence of a material and substantial change in circumstances since the 2022 Agreed Order. Stephanie also filed an amended answer asserting a general denial and requesting attorney's fees.[1]

---

[1] Stephanie's original answer was unsigned. Her amended answer was properly signed by her attorney and was filed before the bench trial and the signing of the summary judgment order.

3

On February 17, 2023, the trial court held a hearing on Stephanie's motion for summary judgment. The trial court purportedly granted a summary judgment but did not sign an order reflecting that ruling until trial.[2]

On March 6, three days before the scheduled bench trial on Jeremy's petition for modification, Jeremy filed a motion for continuance. Jeremy maintained that the basis for Stephanie's summary judgment motion was that there was no evidence of a material and substantial change in circumstances to support modification of conservatorship, possession, and access. Therefore, according to Jeremy, the issue of modification or termination of child support still remained pending.

At the outset of the bench trial, the trial court stated that because it had granted summary judgment it "thought this was over." However, in light of Jeremy's contention that the child-support-modification issue remained pending, it "call[ed] this thing to trial."

Jeremy presented his testimony, Stephanie's testimony, and offered into evidence ten exhibits. After Jeremy rested, Stephanie moved for a "directed verdict" on the basis of there being no evidence of a material and substantial change. The

---

[2]    At the conclusion of the summary judgment hearing, the trial court stated that it would communicate its ruling on the motion for summary judgment to court staff, and "they will let you know how I rule." The docket entry for February 17, 2023 states: "No-Evidence MSJ granted." A written order reflecting the trial court's ruling on the no-evidence motion for summary judgment does not appear in the record until March 9.

trial court agreed and granted Stephanie's motion. At Jeremy's request, the trial court also issued findings of fact and conclusions of law.

On July 26, 2023, the trial court signed a final order denying Jeremy's petition to modify the parent-child relationship and denying Stephanie's request for attorney's fees.

Thereafter, Jeremy filed a motion for new trial, which was overruled by operation of law. Jeremy also filed a motion to recuse. The trial court declined to voluntarily recuse and referred the motion to the Presiding Judge of the Eleventh Administrative Region. Jeremy instituted this appeal.

**No-Evidence Motion for Summary Judgment**

In his first three issues, Jeremy challenges the trial court's order granting Stephanie's no-evidence motion for summary judgment.

First, Jeremy argues that the trial court erred in allowing Stephanie to proceed with a no-evidence motion for summary judgment because the answer on file at the time she filed her motion was unsigned and, therefore, legally ineffective. Second, Jeremy asserts that the trial court erred in granting the no-evidence motion for summary judgment when the grounds in the motion were based on a modification for conservatorship and possession, but the petition only requested a modification of child support. And third, Jeremy argues that the trial court erred in granting the no-evidence motion for summary judgment when he produced more than a scintilla of

evidence to raise a genuine issue of material fact that circumstances had materially changed warranting a modification of his child support obligation.

We are unable to reach the merits of these issues.

First, there is no dispute that the summary judgment on Jeremy's petition for modification did not dispose of Stephanie's request for attorney's fees. A summary judgment order that does not dispose of a party's request for attorney's fees does not dispose of all claims and parties and is interlocutory. *See McNally v. Guevara*, 52 S.W.3d 195, 196 (Tex. 2001) (concluding judgment in which court did not dispose of defendant's request for attorney's fees was interlocutory); *see also Teer v. Duddlesten*, 664 S.W.2d 702, 703 (Tex. 1984) (summary judgment that does not dispose of all parties or issues is interlocutory). That is the situation here.

Moreover, even though the trial court purportedly granted Stephanie's motion for summary judgment before trial, it then considered and ruled upon the merits of Jeremy's petition for modification during the bench trial. By conducting a trial on the merits on Jeremy's request for modification of his child support obligation—considering the evidence introduced at trial, and rendering a final order denying Jeremy's petition to modify—the trial court necessarily vacated its prior interlocutory summary judgment order.[3] A trial court retains continuing control over

---

[3]   *See Urelift Gulf Coast, L.P. v. Bennett*, No. 14-13-00949-CV, 2015 WL 495020, at *2 (Tex. App.—Houston [14th Dist.] Feb. 5, 2015, no pet.) (mem. op.) (holding that trial court vacated prior summary judgment order by conducting trial on claims for

6

its interlocutory orders and has the power to set those orders aside any time before it renders a final judgment. *Fruehauf Corp. v. Carrillo*, 848 S.W.2d 83, 84 (Tex. 1993).

Accordingly, the summary judgment order that Jeremy complains about was interlocutory and necessarily vacated by the trial court's final order. Jeremy's challenges to that summary judgment order are therefore moot.[4]

Even assuming that we could decide these issues, Jeremy has failed to demonstrate reversible error. "Erroneous rulings require reversal only if a review of the record reveals the error was harmful." *See Sw. Energy Prod. Co. v. Berry–Helfand*, 491 S.W.3d 699, 728 (Tex. 2016). The complaining party bears the burden of showing harmful error on appeal in order to obtain reversal. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 667 (Tex. 2009); *Nguyen v. Watts*, 605 S.W.3d 761, 791 (Tex. App.—Houston [1st Dist.] 2020, pet. denied).

The harmless error rule states that, before reversing a judgment because of an error of law, the reviewing court must find that the error amounted to such a denial of the appellant's rights as was reasonably calculated to cause and probably did cause

---

declaratory relief and rendering final judgment and awarding attorney's fees to defendant, without incorporating interlocutory summary judgment into final judgment).

[4] Jeremy necessarily concedes as much in his fifth issue on appeal where he challenges the trial court's directed verdict on his petition for modification.

"the rendition of an improper judgment," or that the error "probably prevented the appellant from properly presenting the case [on appeal]." *G & H Towing Co. v. Magee*, 347 S.W.3d 293, 297 (Tex. 2011) (quoting TEX. R. APP. P. 44.1(a)). The harmless error rule applies to all errors, including erroneously granting summary judgment or otherwise erroneously disposing of a claim. *See id.* at 298–99 (holding that, although trial court errs in granting summary judgment on claim not addressed in summary-judgment motion, error is harmless when unaddressed claim "is precluded as a matter of law by other grounds raised in the case").

Thus, even if the trial court erred in granting Stephanie's motion for summary judgment for the reasons that Jeremy suggests, he has not, and cannot, demonstrate harm by this ruling because the trial court proceeded to a trial on the merits of his child-support modification claim.

We overrule Jeremy's first three issues.

## Child Support Modification

In his fifth issue, Jeremy argues that the trial court erred in granting a directed verdict on his petition for modification because he presented probative evidence that modification of child support was warranted.

### A. Standard of Review

At the outset, we note that Jeremy contends that we should apply the standard of review for a directed verdict, i.e., that we must examine the evidence in the light

most favorable to the party suffering the adverse judgment and reverse if more than a scintilla of evidence raises a fact issue on the challenged issue. *See Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011). This, however, is an appeal from a bench trial.[5] When a party moves for a "directed verdict" in a bench trial, it is construed as a motion for judgment. *See Qantel Bus. Sys., Inc. v. Custom Controls Co.*, 761 S.W.2d 302, 303 (Tex. 1988); *Fondren Const. Co., Inc. v. Briarcliff Hous. Dev. Assocs., Inc.*, 196 S.W.3d 210, 216 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

This distinction is important because we review a trial court's judgment on a motion for judgment differently. *Zuniga v. Amistad Motors*, 677 S.W.3d 149, 151 (Tex. App.—El Paso 2023, no pet.); *Joplin v. Borusheski*, 244 S.W.3d 607, 610 (Tex. App.—Dallas 2008, no pet.) (citing *Qantel*, 761 S.W.2d at 303–04). In entering judgment at the close of the plaintiff's case, the trial judge, acting as fact finder, is presumed to have ruled not only on the legal sufficiency of the evidence, but also on the weight of the evidence and the credibility of the witnesses. *See Qantel*, 761 S.W.2d at 304–05; *Huang v. Don McGill Toyota, Inc.*, 209 S.W.3d 674, 677 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Thus, after granting a motion

---

[5] *See also Grounds v. Tolar Indep. Sch. Dist.*, 856 S.W.2d 417, 422 n.4 (Tex. 1993) (Gonzalez, J., concurring) ("Technically, the use of the term 'directed verdict' in a bench trial is incorrect because there is no jury to direct. In this situation, the correct procedure is for the defendant, at the close of the plaintiff's evidence, to make a 'motion for judgment.'").

for judgment, the trial judge may properly make findings of fact, as well as conclusions of law. *Qantel*, 761 S.W.2d at 304; *Huang*, 209 S.W.3d at 677. Findings of fact in a bench trial have the same force and dignity as a jury verdict—and we review them for legal and factual sufficiency under the same standards that we apply in reviewing a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Huang*, 209 S.W.3d at 677.

When a party attacks the legal sufficiency of an adverse finding on which he had the burden of proof, he must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of his proposed disposition. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). We review the evidence in the light most favorable to the challenged finding and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005).

When a party attacks the trial court's adverse finding for factual insufficiency, he must demonstrate on appeal that the finding is against the great weight and preponderance of the evidence. *Dow Chem.*, 46 S.W.3d at 242. We must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Huang*, 209 S.W.3d at 678.

10

Most of the appealable issues in a family-law case, including issues related to child support, are reviewed for an abuse of discretion. *Banakar v. Krause*, 674 S.W.3d 564, 573 (Tex. App.—Houston [1st Dist.] 2023, no pet.). A trial court abuses its discretion when it acts arbitrarily or unreasonably, or without any reference to guiding rules and principles. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990). Under the abuse-of-discretion standard, legal and factual sufficiency are not independent grounds of error but are relevant factors in assessing whether the trial court abused its discretion. *Banakar*, 674 S.W.3d at 573; *Bush v. Bush*, 336 S.W.3d 722, 729 (Tex. App.—Houston [1st Dist.] 2010, no pet.). A trial court does not abuse its discretion if some evidence of substantive and probative character supports its decision. *Banakar*, 674 S.W.3d at 573; *Whitworth v. Whitworth*, 222 S.W.3d 616, 623 (Tex. App.—Houston [1st Dist.] 2007, no pet.).

## B. Applicable Law

A trial court may modify an order that provides for child support if "the circumstances of the child or a person affected by the order have materially and substantially changed since . . . the date of the order's rendition." TEX. FAM. CODE § 156.401(a)(1)(A). The party requesting modification bears the burden to show such a change in circumstances. *In re N.H.N.*, 580 S.W.3d 440, 445 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

11

In determining whether a modification in child-support payments is warranted, the trial court should examine the circumstances of the child and parents at the time the prior decree was rendered, in relation to the circumstances existing at the time modification of the prior order is sought. *Trammell v. Trammell*, 485 S.W.3d 571, 576 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

"Without both historical and current evidence of the relevant circumstances, the court has nothing to compare and cannot determine whether a change has occurred." *Nellis v. Haynie*, 596 S.W.3d 920, 926 (Tex. App.—Houston [1st Dist.] 2020, no pet.) (quotation omitted).  If a circumstance was sufficiently contemplated at the time of an original agreement, its eventuality is not a changed circumstance; but instead, is an anticipated circumstance that cannot be evidence of a material or substantial change of circumstances. *Smith v. Karanja*, 546 S.W.3d 734, 740 (Tex. App.—Houston [1st Dist.] 2018, no pet.)

## C.    Analysis

As a threshold matter, we note that Jeremy has not challenged any specific findings of fact or conclusions of law on appeal.  When the trial court's findings of fact are not challenged on appeal, they are binding upon the appellate court when supported by some evidence. *See Tenaska Energy, Inc. v. Ponderosa Pine Energy, LLC*, 437 S.W.3d 518, 526 (Tex. 2014); *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986).

12

Here, the trial court made several specific findings of fact that are supported by some evidence, including that the older son's age was contemplated at the time of the 2022 Agreed Order and that the parties' jobs, salaries, households, and custody had not changed since the 2022 Agreed Order was entered. Because Jeremy does not challenge those findings, we are bound by them. And they support the trial court's conclusion of law that there is no evidence of a material and substantial change in circumstances since the 2022 Agreed Order and, thus, they support the trial court's judgment. *See Tenaska Energy*, 437 S.W.3d at 526; *McGalliard*, 722 S.W.2d at 696.

We acknowledge that in some circumstances, a challenge to an unidentified finding of fact may be sufficient for review if the specific finding of fact which the appellant challenges can be fairly determined from the argument, the nature of the case, or the underlying legal theories. *Trammell*, 485 S.W.3d at 576.

In his brief, Jeremy argues that he presented probative evidence of a material change in circumstances in two ways. First, Jeremy contends that he demonstrated a material and substantial change in circumstances because the 2022 Agreed Order contained no "step-down" provision and his oldest child turned 18 four months after entry of that order. Second, Jeremy contends that he presented evidence demonstrating a material and substantial change in his, Stephanie's, and the children's circumstances in the form of payment of health insurance, cell phones,

his purchase of two vehicles for the children, and evidence that Stephanie is "spoiled by her parents."

Even if we liberally construe Jeremy's arguments as a challenge to certain of the trial court's findings, we reach the same conclusion—that the record supports the trial court's judgment. *See id.*; *see also Sussex Council of Co-Owners v. Wang*, No. 01-22-00567-CV, 2023 WL 5208042, at *5 (Tex. App.—Houston [1st Dist.] Aug. 15, 2023, no pet.) (mem. op.) (liberally construing appellant's argument to ascertain specific findings it challenged).

### 1. *Lack of Step-Down Provision*

We construe Jeremy's first argument relating to the lack of a "step-down provision" in the 2022 Agreed Order as a challenge to the legal and factual sufficiency of the evidence supporting the following findings and conclusions by the trial court:

| | |
|---|---|
| Finding of Fact 2: | "The 2022 Order memorialized an oral agreement between the parties stated on the record in open court ('Agreement')." |
| Finding of Fact 6: | "The older son of the parties turned eighteen in June 2022, three months after the time of the 2022 [Agreed] Order; however that event was contemplated and addressed in the Agreement: the parties agreed to lower the amount of child support agreed to in the original 2018 decree of divorce ($1600 per month for two children, with a step-down to $1200 per month when the older son turned eighteen) to '$1200 a month with no step down.'" |

14

Conclusion of Law 8:  "There is no evidence of a material and substantial change in circumstances to either [Jeremy], [Stephanie], or the younger child since the date of the 2022 [Agreed] Order."

The 2022 Agreed Order set Jeremy's child support obligation at $1,200 per month "until the first month following the date of one of the following events as to *each child*," and listing such events as the child reaches the age of 18 or graduates high school (whichever occurs later), marries, dies, or enlists in the armed forces. The Agreed Order then states that "[o]n the second occurrence of one of the above events, the child support obligation of Jeremy Eugene Warren shall terminate."

Jeremy contends that this 2022 order had no step-down provision for when the older child, J.G.W., turned 18 and, therefore, once he turned 18, this resulted in a material and substantial change warranting modification of the child support obligation. But, as the trial court found, this was a circumstance that was contemplated by the parties and addressed by the 2022 Agreed Order.

As Jeremy testified, the original divorce decree set the child support at $1,600 a month, with a decrease to $1,200 per month once J.G.W. turned 18. In January 2022, Jeremy testified that the parties agreed to modify his child support obligation to $1,200 "four months early for both children."

Stephanie testified that the agreement they reached in the 2022 Agreed Order meant that Jeremy's $1,200 per month child support obligation would continue until C.J.W. turns 18 or graduates. Furthermore, Jeremy acknowledged at trial that when

15

their agreement related to the 2022 Agreed Order was read into the record before the trial court, his attorney agreed that there would not be a step-down once J.G.W. turned 18, although he claimed he "was in the back of the courtroom and could not hear what was happening."

In addition, the plain language of the 2022 Agreed Order demonstrates that the child support obligation of $1,200 would continue until one of the enumerated events, which includes the children turning 18, occurred with respect to *each* child, i.e., J.G.W. *and* C.J.W. *See Each*, WEBSTER'S II NEW COLLEGE DICTIONARY (2001) (defining "each" as "[b]eing one of two or more regarded individually : every"). Upon the occurrence of the second event, the obligation would terminate. It is evident from this plain language, as well as the testimony at trial, that the parties contemplated that J.G.W. would turn 18 within a few months after the 2022 Agreed Order was signed and that there would be no decrease in the amount of child support upon that occurrence.

Because J.G.W.'s "ag[ing] out" was a circumstance contemplated by the parties at the time the 2022 Agreed Order was signed, it cannot serve as evidence of a material and substantial change in circumstance now. *See Smith*, 546 S.W.3d at 740. Legally and factually sufficient evidence therefore supports the trial court's finding of fact numbers 2 and 6, and thus its conclusion of law number 8. *See Dow Chem.*, 46 S.W.3d at 241–42.

## 2. *Evidence of Expenses Paid by Jeremy*

We construe Jeremy's second argument related to the payments he made "without assistance from [Stephanie]" as a challenge to the legal and factual sufficiency of the evidence supporting the following findings and conclusions by the trial court:

| | |
|---|---|
| Finding of Fact 4: | "[Jeremy] and [Stephanie] retain the same jobs, salaries, and households as they did at the time of the 2022 [Agreed] Order." |
| Finding of Fact 5: | "[Jeremy] and [Stephanie] split custody of the children 50/50 and are both managing conservators, as they did at the time of the 2022 [Agreed] Order." |
| Finding of Fact 10: | "[Jeremy] tendered ten exhibits, which were admitted into evidence. Many involved expenses for the younger son's truck bought by [Jeremy], which were incurred prior to the 2022 [Agreed] Order." |
| Finding of Fact 11: | "No evidence was presented that the needs or circumstances of the younger son have materially changed since the time of the 2022 [Agreed] Order." |
| Conclusion of Law 8: | "There is no evidence of a material and substantial change in circumstances to either [Jeremy], [Stephanie], or the younger child since the date of the 2022 [Agreed] Order." |

At trial, Stephanie testified that the only circumstance that had changed since the 2022 Agreed Order is that the older child, J.G.W., graduated from high school, and she was now paying his college tuition and room and board. She testified that she does not use any of the child support that she receives for C.J.W. to pay for those

17

tuition expenses for J.G.W. She also testified that she is living in the same house, driving the same cars, teaching at the same elementary school, and that "[e]verything has stayed the same." And she testified that her parents give her money "to live in a manner in which [she] is accustomed to because they spoil [her]," but that also occurred when she and Jeremy were married.

Stephanie further testified that C.J.W. "lives in my house, he uses my water, my electricity, my internet, occasionally drives my cars, my insurance. His food bill is ridiculous." She testified that the grocery bill for the two weeks that she has custody of C.J.W. each month is about $250 per week.

Jeremy, in contrast, testified that his grocery bill when C.J.W. is in his custody "does not get anywhere near $200 for those two weeks." Jeremy testified that C.J.W.'s "expenses do not even get to $1,200 when he's with [Jeremy] for those two weeks" so he knows "they don't get to that . . . when he's with Stephanie." Jeremy also testified that he pays for C.J.W.'s FFA fees, soccer fees, registration fees, driving test, suits for prom and football banquet, football camps, dentist bills, and school lunches.

None of the above evidence is demonstrative of a change in circumstances, let alone a material and substantial change. No evidence was provided by Jeremy regarding the circumstances that existed when the 2022 Agreed Order was signed, or how those circumstances *changed* since that time. In fact, Stephanie was

18

unequivocal that "[e]verything has stayed the same." And Jeremy did not provide any testimony or documentary evidence that the expenses and fees he paid (i.e., soccer, suits, camps, dentist bills, etc.) were incurred only after the rendition of the 2022 Agreed Order.

Jeremy testified that he purchased a truck for C.J.W. in October 2021 to give him when he turned 16 in May 2022. Jeremy stated that he paid $8,000 cash for the truck, in addition to paying the taxes and for "significant repairs including an air conditioning system and . . . new tires." In total, Jeremy testified that he paid over $20,000 for that vehicle. And he introduced into evidence various receipts documenting these expenses, which were incurred between October 2021 and February 4, 2022.

Stephanie acknowledged this but testified that the truck expenses were incurred because Jeremy "refused to accept a 2004 Camry," one of the vehicles Stephanie owns, for their son to drive. Also, as Jeremy admitted and the documents reflect, none of the expenditures related to the truck were made after the 2022 Agreed Order, which was signed on March 23, 2022. As a result, those expenses are not probative evidence of a change in circumstances since the date of the 2022 Agreed Order. *See* TEX. FAM. CODE § 156.401(a)(1)(A).[6]

---

[6] Even if it were, "[a] history of support voluntarily provided in excess of the court order does not constitute cause to increase the amount of an existing child support

19

Consequently, we conclude that legally and factually sufficient evidence supports the trial court's finding of fact numbers 4, 5, 10, and 11 and conclusion of law number 8. In light of this record, and all the reasons detailed above, we hold that the trial court acted within its discretion in not finding a material and substantial change in circumstances sufficient to modify Jeremy's child support obligations. *See In re N.H.N.*, 580 S.W.3d at 446.

We overrule Jeremy's fifth issue.

## Due Process

In his fourth issue, Jeremy argues that the trial court violated his "basic right to a fair trial, right to be heard by a neutral judge, his due process rights, and several judicial canons." According to Jeremy, the trial court "consistently belittled [him], questioning him herself rather than allowing counsel for [Stephanie] to do that, and showed favoritism and bias toward [Stephanie] at the outset."

## A. Complained-of Conduct

Jeremy points to several examples of comments by the trial court as evidence of the trial court's alleged bias. For example, Jeremy claims that he was at a disadvantage from the outset because the trial court did not want to hold a trial, but that "since [she was] all the way down here, [she] might as well call this thing to

order." TEX. FAM. CODE § 156.403; *In re N.H.N.*, 580 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

20

trial." He also notes that when Stephanie was sworn in, the trial court inappropriately commented on her hair style, saying: "Have you cut your hair? Well, I haven't seen you in however many years, but anyway it looks nice."

Jeremy takes issue with the trial court's inquiries regarding the direction of his direct examination of Stephanie, including asking "Who cares about that? You agreed to that amount a year ago?" in response to Jeremy's questions related to Stephanie's participation in booster club and her expenses related to C.J.W. He further argues that the trial court refused to allow Stephanie to obtain documents that were the subject of a subpoena duces tecum.

Finally, Jeremy contends the trial court exhibited bias by intervening during his testimony with comments like, "[w]hy do you believe that child support is unfair as a general concept," and "this doesn't embarrass you?"

## B.    Applicable Law

"All parties have a right to a fair and impartial trial before a neutral judge." *Ellason v. Ellason*, 162 S.W.3d 883, 887 (Tex. App.—Dallas 2005, no pet.) (citing *Markowitz v. Markowitz*, 118 S.W.3d 82, 86 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)); *see* U.S. CONST. amend. XIV; TEX. CONST. art. 1, § 13. We presume the trial judge was neutral and detached "in the absence of a clear showing to the contrary." *In re G.M.K.*, No. 13-22-00016-CV, 2023 WL 5122524, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 10, 2023, no pet.) (mem. op.).

21

"[J]udicial remarks during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge." *Dow Chem.*, 46 S.W.3d at 240 (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)). "Not establishing bias or partiality are expressions of impatience, dissatisfaction, annoyance, and even anger. A judge's ordinary efforts at courtroom administration—even a stern and short-tempered judge's ordinary efforts at courtroom administration—remain immune." *Id.* (cleaned up).

The Texas Supreme Court has recognized that "the discretion vested in the trial court over the conduct of a trial is great." *Id.* at 240. That discretion permits a trial court to "intervene to maintain control in the courtroom, to expedite the trial, and to prevent what it considers to be a waste of time." *Id.* at 241. "In a bench trial, the judge may question witnesses to clarify facts on an issue that the judge must decide in fulfilling [his] role as factfinder." *Sklar v. Sklar*, 598 S.W.3d 810, 825 (Tex. App.—Houston [14th Dist.] 2020, no pet.) However, "a trial judge should not act as an advocate" for a party. *Id.* at 824.

**C.     Analysis**

Applying these principles to this case, and considering the record as a whole, we cannot conclude that the trial court's comments, questions, and interruptions of Jeremy demonstrated "a deep-seated favoritism or antagonism that would make fair

22

judgment impossible," which would be necessary for this Court to reverse the trial court's judgment. *See Dow Chem.*, 46 S.W.3d at 240–41; *In re G.M.K.*, 2023 WL 5122524, at *6.

Although the trial court's choice of words may appear to express "impatience, dissatisfaction, annoyance, or even anger," the record before us demonstrates that the trial court was merely exercising its discretion over the conduct of a trial and fulfilling its role as a factfinder. *See Dow Chem.*, 46 S.W.3d at 240 (providing expressions of impatience, dissatisfaction, annoyance, and even anger do not establish bias or partiality); *In re G.M.K.*, 2023 WL 5122524, at *6.

Many of the trial court's comments were directed at steering the testimony and evidence to the ultimate issue in this case, i.e., whether there had been a change in circumstances since the rendition of the 2022 Agreed Order, rather than on facts and circumstances that predated that order. The trial court's questions and comments were trying to elicit further detail about Jeremy's basis for requesting a modification in light of his agreement to the child support obligation in the 2022 Agreed Order.[7] And they are in line with the trial court's duty to direct "competent

---

[7] For instance, the following exchange occurred after the trial court asked Jeremy whether he believed child support was "unfair as a general concept."

Jeremy:    When [C.J.W.] is with me for the two weeks out of a month, I spend about 50 to $60 on the grocery bills. We don't have the luxury to go out to eat because of the money that's being taken from my check to pay Stephanie for his care, the $1,200 per month.

23

and material questions to a witness in order to clarify testimony or to elicit testimony that has not otherwise been brought out." *In re L.J.H.*, No. 05-21-00183-CV, 2021 WL 4260769, at *3 (Tex. App.—Dallas Sept. 20, 2021, no pet.) (mem. op.).  Courts recognize that such practice is "especially proper" in a bench trial where the best interests of children are at issue. *See id.*

Other comments made by the trial court, such as questioning Jeremy about whether he was really making an argument with a "straight face," or asking Jeremy to "please don't" continue a line of questioning, "you're killing me if you go there," were expressions of frustration with the course of the proceedings and what it appeared to believe was a waste of time.  We disagree that these expressions of

| | |
|---|---|
| The Court: | Let me just stop you there.  Why do you believe that child support is unfair as a general concept? |
| Jeremy: | I do not believe that child support is unfair as a general concept. In our case when parents split custody 50-50 -- |
| The Court: | Which is the same as it's been from the very beginning, right? |
| Jeremy: | Correct. . . . |
| The Court: | Okay and the reason I allude to that is maybe this was or was not the best deal you could have agreed to, but most importantly you agreed to it. |
| Jeremy: | So I do not disagree with child support as a general concept.  Regarding two parents who split custody 50-50, it's my opinion that there is equal time and equal expenses.  Neither party should be ordered to pay child support.  However, I know some courts do an offset regarding the higher wage earner and the lower wage earner.  Doing the offset in our case, I've done the math. The child support should be set at about $900 a month. |

frustration established bias or prejudice.[8]  Rather, taken together in context, we conclude that these comments, along with the other comments and questions, indicate that the trial court was exercising her broad discretion to "maintain control and promote expedition." *Dow Chem.*, 46 S.W.3d at 241.

Accordingly, for all these reasons, we hold that the trial court did not deny Jeremy a fair trial in violation of his due process rights.

We overrule Jeremy's fourth issue.

**Motion to Recuse**

Lastly, in his sixth issue, Jeremy argues that the trial court erred in denying his motion to recuse.

When a motion to recuse is filed under Texas Rule of Civil Procedure 18a, a trial court has only two options: recusal or referral of the case to the presiding judge for a determination as to its merits. TEX. R. CIV. P. 18a(f); *Johnson v. Pumjani*, 56 S.W.3d 670, 672 (Tex. App.—Houston [14th Dist.] 2001, no pet.).  Rule 18a(g) requires the presiding judge to either rule on a referred motion or assign a judge to rule and requires that ruling to be in writing. TEX. R. CIV. P. 18a(g)(1)–(2).

---

[8]     *See, e.g.*, *In re L.J.H.*, No. 05-21-00183-CV, 2021 WL 4260769, at *3 (Tex. App.—Dallas Sept. 20, 2021, no pet.) (mem. op.) (concluding trial court's comments to appellant father that he should not be "trying to be cheeky" and advising that he was going to "piss her off" were "expression[s] of frustration" with father's nonresponsive answers and did not establish bias or prejudice); *In re A.E.A.*, 406 S.W.3d 404, 420–21 (Tex. App.—Fort Worth 2013, no pet.) (rejecting argument that trial court's statement that father was "irritating" judge demonstrated bias that affected court's rulings).

25

Here, after the trial court denied his petition to modify the parent-child relationship, Jeremy moved to recuse the trial court on the basis that she was impartial and biased against him. The trial court declined to recuse voluntarily and referred the motion to the Presiding Judge of the Eleventh Administrative Judicial Region for a ruling. Although Jeremy contends that the motion to recuse was denied by the presiding judge, no such order is included in the appellate record.[9]

To preserve a complaint for appellate review, the record must show that the complaining party made a complaint to the trial court by timely request, objection, or motion and that the trial court ruled on the request, objection, or motion. *See* TEX. R. APP. P. 33.1(a). As the appellant, it was Jeremy's burden to bring forth a record sufficient to show reversible error. *See Christiansen v. Prezelski*, 782 S.W.2d 842, 843 (Tex. 1990) (per curiam); *Huston v. United Parcel Serv., Inc.*, 434 S.W.3d 630, 636 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (citing *Nicholson v. Fifth Third Bank*, 226 S.W.3d 581, 583 (Tex. App.—Houston [1st Dist.] 2007, no pet.)).

Because the presiding judge's ultimate order on the merits of Jeremy's motion to recuse is not included in the record before us, Jeremy has waived any complaint about his recusal motion. *See* TEX. R. APP. P. 33.1(a); *Green v. Kaposta*, 152 S.W.3d 839, 842 (Tex. App.—Dallas 2005, no pet.) (holding appellant's complaint related

---

[9] The only order included in the appellate record is the one referring Jeremy's motion to recuse to the presiding judge.

to motion to recuse was waived because neither motion nor order was included in appellate record).

We overrule Jeremy's sixth issue.[10]

## Conclusion

Based on the record before us, and all the reasons detailed above, we affirm the trial court's judgment in all things.

Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Hightower and Countiss.

---

[10] Even if Jeremy's sixth issue was preserved, his arguments are similar to those that he made under his fourth issue relating to purported judicial bias. For the same reasons stated in connection with our analysis of Jeremy's fourth issue, we would also overrule Jeremy's sixth issue.